UNITED STATES DISTRIC COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LAWRENCE GILDER,

              Plaintiff,

        -against-                            Index No.: 15-CV-04094
                                               (KAM)(RER)

JOHN P. GULLINO, both individually and in his capacity as
the Chairman of the DEMOCRATIC COMMITTEE OF
RICHMOND COUNTY, BOARD OF ELECTIONS IN THE
CITY OF NEW YORK, CLERK 1, CLERK 2 and CLERK 3,
said names being as of yet unidentified arties, JOHN and
JANE DOES 1-10, said names being fictitious; XYZ
ENTITIES, AND JOHN DOE(S) #1-10,

              Defendants.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS JOHN P. GULINO'S AND
THE DEMOCRATIC COMMITTEE OF RICHMOND COUNTY'S
<u>MOTION TO DISMISS (Fed. R. Civ. Pro. 12(b)(6))</u>**

Andrew L. Hoffman, Of Counsel, &
Richard M. Langweber, Esq.
**Langweber McQuat LLP**
261 Madison Ave., 12th Floor
New York, NY 10016
P: (646) 771-6772
F: (212) 736-3910
C: (508) 245-9566
ahoffman@andrewhoffmanlaw.com
rlangweber@langwebermcquat.com
*Counsel for Defendants John P. Gulino and
the Democratic Committee of Richmond
County*

# TABLE OF CONTENTS

Page

Table of Authorities………………………………………………………………………iii

Preliminary Statement…………………………………………………………………..1

Statement of Facts………………………………………………………………………1

    I.  The Parties and the "Job" at Issue……………………………………………....2

    II.  The Democratic Party's Nomination Process for the May 5, 2015 Special Election
        to Fill the Vacant Congressional Seat………………………………………..…3

    III.  Plaintiff's Attempts to Allege Invidious Discrimination Based Upon His Race and/or
        National Origin………………………………………………………………5

Law and Argument………………………………………………………………….7

    I.  Standard of Review on a Motion to Dismiss…………………………………………...7

    II.  All Six of the Plaintiff's Causes of Action Must Be Dismissed Because the
        Complaint Fails to Allege Facts Constituting Purposeful Discrimination………………..8

        *a.*  *All Six of Plaintiff's Causes of Action Require a Showing of
            "Purposeful Discrimination" Under the Equal Protection
            Clause*...……………………………………………………………..8

        *b.*  *The Complaint Does Not Allege "Purposeful Discrimination" Under
            the Equal Protection Clause*…………………………………………..10

        *c.*  *The Complaint Fails to State a Claim for "Disparate Impact" Under
            Each of § 1981, Title VII, and the NYSHRL*…………………………..17

        *d.*  *Plaintiff Has Not Adequately Alleged Purposeful Discrimination for
            His Cause of Action Under NYCHRL* ………………………….………..19

    III.  Plaintiff's First Cause of Action Alleging Employment Discrimination Under
        § 1981, Plaintiff's Third Cause of Action Alleging Employment Discrimination
        Under Title VII, Plaintiff's Fourth Cause of Action Alleging Employment
        Discrimination Under NYSHRL, and Plaintiff's Fifth Cause of Action Must
        All Be Dismissed Because There is No "Employment Relationship" At Issue…………20

    IV.  Plaintiff Has Not Adequately Alleged a Violation of His First Amendment
        Right to Civic Association Because Plaintiff Has No Constitutional Right

to a "Fair Chance of Prevailing in Their Parties' Candidate-Selection Process"………...22

    *a.*   *There is No First Amendment Right to a "Fair Chance of Prevailing in Their Parties' Candidate-Selection Process"*…………………………………22

    *b.*   *The Applicable New York Laws and Party Rules Governing Nominations Do Not Violate the First Amendment Because They Are Reasonably Related to a Legitimate State Purpose While Still Providing Plaintiff With Adequate Access Both to the Party and the General Election Ballot*………...26

Conclusion……………………………………………………………………………….31

# Table of Authorities

<u>**Cases**</u>

*Adarand Constructors, Inc. v. Pena*,
    515 U.S. 200 (1995)……………………………………………………………9

*Albert v. Corovano*,
    851 F.2d 561 (2d Cir. 1988)…………………………………………………...18

*Albunio v. City of New York*,
    16 N.Y.3d 472 (2011)…………………………………………………………19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)…………………………………………………………....7

*Askin v. Dept. of Educ. of N.Y.*,
    110 A.D.3d 621 (1st Dept. 2013)……………………………………………19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)…………………………………………………………...7

*Bowen-Hooks v. City of New York*,
    13 F.Supp. 3d 179 (E.D.N.Y. 2014)………………………...…………………...20

*Brown v. Daikin America Inc.*,
    756 F.3d 219 (2d Cir. 2014)…………………………………………...…18

*Butler v. Castro*,
    896 F.2d 698 (2d Cir. 1990)…………………………………………………...10

*Davis v. Schnell*,
    81 F. Supp. 872 (SD Ala.), aff'd per curiam, 336 U.S. 933 (1949)……………………...11

*Griffin v. School Board*,
    377 U.S. 218 (1964)…………………………………………………………...11

*Grosjean v. American Press Co.*,
    297 U.S. 233 (1936)………………………………….………………………11

*Hayden v. County of Nassau*,
    180 F.3d 42 (2d Cir. 1999)…..………………………………………9, 9n.3

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007) (per curiam)……………………………………..7

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs,*
716 F.3d 10 (2d Cir. 2013)……………………………………………………………10n.3

*Kern v. City of Rochester,*
   93 F.3d 38 (2d Cir. 1996)……………………………………………………………..10

*Keyes v. School Dist. No. 1, Denver Colo.,*
   413 U.S. 189 (1973)…………………………………………………………………...11

*Lane v. Wilson,*
   307 U.S. 268 (1939)…………………………………………………………………...11

*Lasalle v. City of New York,*
   2015 U.S. Dist. LEXIS 41163 (S.D.N.Y. March 30 2015)……………………………...19

*Lavendar-Cabellero v. Department of Consumer Affairs,*
   458 F.Supp 213 (S.D.N.Y. 1978)……………………………………………………..22

*Marchant v. N.Y. City Bd. of Elections,*
   815 F. Supp. 2d 568 (E.D.N.Y. 2011)………………………………………………13, 14

*Maslow v. Bd. of Elections,*
   658 F.3d 291, 296 (2d Cir. 2011)……………………………………………………28n.11

*Matter of Fall v. Luthmann,*
   109 A.D.3d 540 (2nd Dept. 2013), appeal denied, 21 N.Y.3d 861 N.Y. (Aug. 21,
   2013)…………………………………………………………………………………..1n.1

*Matter of Luthmann v. Gulino,*
   131 A.D.3d 136 (2nd Dept. 2015), appeal denied 2015 N.Y. LEXIS 2137
   (N.Y. Aug. 25, 2015)…………………………………………………………………..1n.1

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
   715 F.3d 102 (2d Cir. 2013)…………………………………………………………...19

*N.Y. State Bd. of Elections v. Lopez-Torres,*
   552 U.S. 196 (U.S. 2008)………………………1, 23, 24, 25, 26, 27, 28, 29, 30, 30n.13

*O'Connor v. Davis,*
   126 F.3d 112 (2d Cir. 1997)…………………………………………………………...20

*Ortiz v. City of New York,*
   105 A.D.3d 674 (1st Dept. 2013)……………………………………………………10n.3, 19

*Price v. N.Y. State Bd. of Elections,*
   540 F.3d 101 (2d Cir. 2008)…………………………………………………………28n.11

*Regents of Univ. of Cal. v. Bakke*,
　　438 U.S. 265 (U.S. 1978)…………………………………………………....10n.3

*Reitman v. Mulkey*,
　　387 U.S. 369 (1967)…………………………………………………….…...11

*Rivera-Powell v. N.Y. City Bd. of Elections*,
　　470 F.3d 458 (2d Cir. 2006)……………………………………………9n.3, 10, 23

*Rossito-Canty et. al. v. Cuomo*,
　　EDNY Docket No. 15-CV-00568………………………………………………3

*Ruiz v. County of Rockland*,
　　609 F.3d 486 (2d Cir. 2010)……………………………………………....18

*Soloviev v. Goldstein*,
　　2015 U.S. Dist. LEXIS 62702 (E.D.N.Y. May 12, 2015)………………………19

*Spiegel v. Schulmann*,
　　604 F.3d 72 (2d Cir. 2010)(per curiam)…………………………………………19

*State Div. of Human Rights v. Bd. of Co-op. Educ. Servs.*,
　　98 A.D.2d 958 (4th Dep't 1983)……………………………………………...20

*Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*,
　　112 A.D.2d 240 (2d Dep't 1985)……………………………………………20

*Tenney v. Brandhove*,
　　341 U.S. 367 (1951)…………………………………………………….....11

*Tiraco v. New York State Bd. of Elections*,
　　963 F. Supp. 2d 184 (E.D.N.Y. 2013)…………………………………………1

*United States v. New York State Department of Motor Vehicles*,
　　82 F.Supp.2d 42 (E.D.N.Y. 2000)……………………………………………21

*United States v. Nixon*,
　　418 U.S. 683 (1974)…………………………………………………...11

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
　　429 U.S. 252 (U.S. 1977)…………………………………………9, 11, 12, 13, 18

*Yick Wo v. Hopkins*,
　　118 U.S. 356, 373-74 (1886)…………………………………………………...9

*Yusuf v. Vassar Coll.*,
     35 F.3d 709 (2d Cir. 1994)……………………………………………………..9n.7

**Statutes and Rules**

Fed. R. Civ. Pro. 12(b)(6)…………………………………………………………7

42 U.S.C. § 1981……………………………...………………………8, 9n.3, 14, 18, 20, 23 n.9

42 U.S.C. § 1983…………………………………………………………8, 8n.6, 9n.3, 20, 22

42 U.S.C. § 2000e…………………………………………………………...…22

NY ELN § 2-114.1……………………………………………………………..4n.4

NY ELN § 6-114……………………………………………………...3, 4n.4, 30

NY ELN § 6-134.4……………………………………………………………...5

NY ELN § 6-136.2……………………………………………………………5, 30

NY ELN § 6-138………………………………………………………………30

NY ELN § 6-140………………………………………………………………30

NY ELN § 6-142……………………………………………………………...5, 30

NY ELN § 6-144………………………………………………………………30

NY ELN § 6-146………………………………………………………………30

NY ELN § 12-300……………………………………………………………..21

NYCHRL……………………………………………………………9, 10n.3, 19

NYSHRL……………………………………………………8, 10n.3, 18, 19, 20

**Administrative Regulations and Party By-Laws**

By-Laws for Democratic Committee of Richmond County,
     Art. IX…………………………………………………………...4, 17, 31n.13

By-Laws for the Democratic Committee of Richmond County,
     Art. II § 1…………………………………………………………………31n.13

By-Laws for Democratic Committee of Richmond County,
Art. II § 2……………………………………………………..4, 29, 31n.13

By-Laws for Democratic Committee of Richmond County,
Art. II § 3………………………………………………………4, 29

By-Laws for Democratic Committee of Richmond County,
Art. III § 3……………………………………………………..4, 29

By-Laws for Democratic Committee of Richmond County,
Art. V § 1……………………………………………………..4, 29, 31.n13

By-Laws for Democratic Committee of Richmond County,
Art. IX…………………………………………………...4, 17, 31n.13

Rules of the Democratic Party of the State of N.Y.,
Art. I, § 2(d)…………………………………………………...3, 17

Rules of the Democratic Party of the State of N.Y.,
Art. VI, Section 2(a)(iii)…………………………………………...3

## **<u>Treatises</u>**

<u>18 N.Y. Jur. 2d Civil Rights § 48</u> (2013)…………………………………………...20

<u>8 J. Wigmore, Evidence § 2371</u> (McNaughton rev. ed. 1961)…………………...…...11

**PRELIMINARY STATEMENT**

The gravamen of the Plaintiff's Complaint is that Mr. Gulino and the Democratic Party of Richmond County ("Party Defendants") denied the Plaintiff the opportunity to run or be interviewed for the "job" of United States Representative for New York's Eleventh Congressional District due to the Plaintiff's race and/or national origin.  The Complaint, however, is completely bereft of any facts that suggest a discriminatory purpose, or even a discriminatory effect.  In addition, there was no "employment relationship" at issue between the Plaintiff and the Party Defendants.  Finally, given the Plaintiff's complete failure to allege any facts from which one could infer purposeful discrimination, the Complaint at best alleges a claim for violation of Plaintiff's First Amendment right to have a "fair chance of prevailing in their parties' candidate-selection process," a claim that the United States Supreme Court has squarely rejected in Lopez Torres v. N.Y. State Bd. of Elections, 552 U.S. 196 (2008), and that this very court has recently described as "misguided and unsubstantiated."  Tiraco v. New York State Bd. of Elections, 963 F. Supp. 2d 184, 198 (E.D.N.Y. 2013).

Ultimately, the Plaintiff's Equal Protection and First Amendment claims are so devoid of factual and legal merit that one is forced to conclude that the Complaint was filed to achieve some political purpose rather than as a legitimate attempt to enforce constitutional rights, and this Complaint thus cries out for dismissal and sanction.[1]  Accordingly, the Party Defendants respectfully request that the Court dismiss the Complaint, with prejudice, and for such other and further relief as this Court may deem just and proper to deter additional abuses in the future.

---

[1] The Court may take judicial notice that Plaintiff's counsel Richard Luthmann, who litigated (and lost) his own failed 2013 bid to become Staten Island Borough President (see Matter of Fall v. Luthmann, 109 A.D.3d 540 (2nd Dept. 2013), appeal denied, 21 N.Y.3d 861N.Y. (Aug. 21, 2013), also recently brought a failed litigation aimed at usurping the Party Defendants by invalidating petition signatures collected to keep Mr. Gulino on the County Committee and as its party chairman.  See Matter of Luthmann v. Gulino, 131 A.D.3d 136 (2nd Dept. 2015), appeal denied 2015 N.Y. LEXIS 2137 (N.Y. Aug. 25, 2015).

## STATEMENT OF FACTS

**I.      The Parties and the "Job" at Issue**

Plaintiff Lawrence E. Gilder asserts that he "is…a black man in America, a member of the Cherokee Nation…a lover, a political activist, and a registered voter and enrolled member of the Democratic Party in Richmond County, New York."  Compl. ¶ 7.  In addition to these features of his resume, the Plaintiff also alleges that he is an employee of his attorney, Mr. Luthmann.  See Compl. Exh. K, Letter from Lawrence E. Gilder to Scott Stringer, New York City Comptroller, Jan. 5, 2015.

Defendant John P. Gulino ("Mr. Gulino") is an attorney on Staten Island and the Chairman of the Democratic Committee of Richmond County ("the Committee").  Compl. ¶ 9.  The Complaint further alleges that Mr. Gulino was the "*de facto* selector" of the Democratic Party's candidate in the May 5, 2015 Special Election for New York's Eleventh Congressional District because "in the history, custom and practice, the choice is deferred to the County Leader who comprises the larger portion of the district or political subdivision."  Id. at ¶ 70.  With respect to Defendant Committee, the Complaint alleges that it "is the recognized County Committee under the rules of the Democratic Party of the State of New York."  Compl. ¶ 24.   In addition to Mr. Gulino, the Plaintiff has also sued the Board of Elections for the City of New York, id. at ¶¶ 28-36, as well as three unidentified "Clerks," id. at ¶¶ 37-48.

Plaintiff alleges that "[t]his complaint centers around a job—the job of U.S. Representative for New York's 11th Congressional District (NY-11)—and the process by which the Democratic Party's candidate for the job-a process tainted by invidious discrimination." Compl. ¶ 52.  This "job" became available when its previous holder, Congressman Michael Grimm, resigned on January 5, 2015.  Id. at ¶ 58.

On February 5, 2015, one month after Grimm vacated his post, Plaintiff joined a suit to compel New York State Governor Andrew Cuomo to set a date for the Special Election to fill the vacancy.  Id. at ¶ 59.  This suit was dismissed on February 24, 2015, as being moot because a date had been set for the special election.  See Order Dismissing Complaint in *Rossito-Canty et. al. v. Cuomo*, EDNY Docket No. 15-CV-00568, Feb. 24, 2015.

## II.    The Democratic Party's Nomination Process for the May 5, 2015 Special Election to Fill the Vacant Congressional Seat

The Complaint alleges that Article I, Section 2(d) of the Rules of the Democratic Party of the State of New York requires the Party to:

> [P]ublicize fully and in such manner as to assure notice to all interested parties a full description of the legal and practical procedure for selection of the Party's officers and representatives at all levels.  Publication of these procedures shall be made in such fashion that all prospective and current members of the Party…will be fully and adequately informed of the pertinent procedures in time to participate in each selection procedure at all levels of the Party's organization.  Compl. ¶ 87.

Plaintiff continues to allege that under NY ELN § 6-114, "Party nominations for an office to be filled at a *special election* for U.S. Representatives shall be made in the manner prescribed by the rules of the party."  Compl. ¶ 63.

The Complaint further states that, pursuant to Article VI, Section 2(a)(iii) of the Rules of the Democratic Party of the State of New York: "[n]ominations for an office to be filled at a special election…shall be made....by the district or party committee thereof…"  Compl. ¶ 65.  In addition, although not pled directly in the Complaint but incorporated by reference to the Rules of the Democratic Party of the State of New York in Compl. ¶ 65, Article IX of the Rules of the Democratic Committee of Richmond County state that where a party nomination is required for a vacant seat then it is the County or District Committee Chair, who may consult with the full or

executive committees at his or her discretion, who shall have the authority to convene a meeting of the Committee and nominate a candidate for the office at issue.  See By-Laws, Article IX.[2]

The County Committee, meanwhile, is elected "biennially, by the enrolled Democratic voters in each Election District…at the Primary Election in each odd numbered year," id. Art. II § 2, and members must be an enrolled in the Democratic Party and a resident of the applicable Assembly District.  Id. at § 3.  The Committee Chair, in turn is elected by the County Committee every other year after the primary election, id. Art. III § 3, Art. V § 1, and any duly-enrolled Democrat may seek the office of Committee Chair, even if not a member of the County Committee.  Id. Art. V § 1.  Plaintiff concedes that "the candidates were chosen *pursuant to the Rules of the Democratic Party of the State of New York,* by the Democratic Chairs of the County Committees of the various counties of Kings and Richmond."  Compl. ¶ 68 (emphasis added).  In accordance with these by-laws, a Committee meeting that had been duly advertised and was open to the public so that anyone who wished could attend and ask to be considered for the nomination was held on February 26th, 2015. The Plaintiff does not allege that he attended this meeting in order to seek the nomination.

Nomination via the County Committee and its Chair is the only means by which an individual can seek the Democratic Party's nomination in a special election; an individual cannot be placed on a primary ballot by petitioning the party with a specified number of signatures of enrolled party members in the applicable electoral district.  Compl. ¶ 68.  Although an individual cannot seek the party's nomination by petitioning the party with the requisite number of

---

[2] Unless otherwise specified, all citations to "By-Laws" refer to the By-Laws of the Democratic Committee of Richmond County, adopted Sept. 17, 2013.  As a courtesy, the By-Laws are attached to this motion as "Exhibit A." The Committee by-laws have the force and effect of law.  See NY ELN § 6-114 ("Party nominations for an office to be filled at a special election shall be made in the manner prescribed by the rules of the party"), and NY ELN § 2-114.1 ("Each committee may prepare rules for governing the party within its political unit.").

signatures, an individual can be placed on the general election ballot by securing the signature of

the lesser of 5% of the total voters in the applicable electoral district or 4,000 such voters, and

delivering those signatures to the applicable Board of Elections within thirty-seven days of the

election date (the "designating petition" method).  See generally, NY ELN §6-142; NY ELN § 6-

136.2; NY ELN § 6-134.4.  Plaintiff does not allege that he sought to be placed on the general

election ballot via the petition-signature method.

**Plaintiff's Attempts to Allege Invidious Discrimination on the Basis of Race and/or National Origin**

Plaintiff alleges that, in his position as head of the Democratic Committee of Richmond

County, Mr. Gulino solicited interviews for the "position" of the Democratic Nominee for New

York's 11th Congressional District.  Compl. ¶ 92.  Plaintiff alleges that in response to this

"announcement," he wrote Mr. Gulino several letters expressing his interest in the "position."

The letters' contents and tone are instructive in this case, so portions are excerpted below:

> Mr. Gulino your track record of your system for choosing candidates is a failed system….You wonder why you can't find good candidates—the answer is simple. You don't want to find good candidates and you don't want to groom potential candidates in the same way the Republican Party has….You have not used your Party Leader position to build a political "bench" because you have been too busy building a judicial bench over which you can exert your influence.  I would like to fix the judicial system as well, but not the way you do….So, Party Leader Gulino, let this letter serve as my notice to you of my intention to seek the candidacy of the Democratic Party for the Congressional Seat left vacant by the resignation of Mr. Michael Grimm.  I would like to have an interview with you….we both can meet at my favorite restaurant…and eat some Sicilian food[3]…while we discuss my vision for the 11th Congressional District, one you obviously have never considered.  Compl. ¶ 94, Compl. Exh. O, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Jan. 14, 2015.

---

[3] It is past the point of irony that Plaintiff accuses Mr. Gulino of racial discrimination, and yet it is his letters that contain overtones of animus based on national origin with its references to "Sicilian food."

Plaintiff alleges that he never received a response to the above-referenced letter, so he then sent Mr. Gulino two more letters expressing his interest in the "position."  Compl. ¶¶ 96-99. The first letter states:

> I wonder whether your failure to live up to stated promises is yet another "Gulino Practice" that blurs the line between the Business of Politics and the Politics of Business….Too many past Democratic Candidates have been all together ignored, or what is worse, burnt when the campaign contributions by friends, family, community and loyal democrats end up in the pockets of select lobbyists and political consultants.  And why wouldn't they?  To actually support a viable Democratic candidate on Staten Island would go against all of the back room political deals that you have made to build your judicial bench at the expense of the people of Staten Island and the members of the Democratic Party- the true "Gulino Practice."  Compl. Exh. P, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Jan. 30, 2015.

According to Plaintiff's Complaint, he received no response to this letter.  Compl. ¶ 98.

Plaintiff alleges he sent a third letter to Mr. Gulino dated February 11, 2015.  In this letter, Plaintiff again expresses his interest in securing the Democratic nomination:

> It has been 37 days that we have been without representation in Washington.  I believe that there should be no taxation without representation.  But your recent actions can only lead to the conclusion that you do not want Staten Island to have representation any time soon, and when the election does take place, you have all but ensured that a Democrat will not be elected….Mr. Gulino, why won't you interview me?  Why won't you interview persons of color?  Why won't you hear the views of the minority community on Staten Island?  If you will not be our leader, maybe it is time to find a real leader-whether in the Democratic Party or someplace else….So, I leave it to you Mr. Gulino.  What time should I be available to speak with the Executive Committee tonight?  Will you continue to ignore me and appear biased?  Will you flat out reject me and confirm that your [sic] are not a man of your word?  Or will you be a man and tolerate someone who is not a member of the "Raccoon Lodge" that you have turned the Democratic Party on Staten Island into during your tenure as Party Leader [sic]. Compl. Exh. Q., Letter from Lawrence E. Gilder to John P. Gulino, Esq., Feb. 11, 2015.

Plaintiff alleges he never received any response from this letter.  Compl. ¶ 100.

The Complaint continues to allege that Mr. Gulino only interviewed white individuals of European descent-and no African Americans, Native Americans, or other ethnic minorities-for

the "position" of the Democratic nominee as a result of invidious racial and ethnic

discrimination. Compl. ¶¶ 102-109. Prior to filing suit here, Plaintiff filed a complaint with the

Equal Employment Opportunity Commission ("EEOC"). Compl ¶ 50. Citing the letter received

from the EEOC as an exhibit to the Complaint, Plaintiff alleges that the "EEOC cleared

administrative preconditions for Mr. Gilder to bring this lawsuit." Id. at ¶ 51 Exh. I. A review

of the EEOC letter-incorporated by reference into the Complaint-reveals, however, that the

EEOC actually rejected the Plaintiff's claim because "[t]he Respondent employs less than the

required number of employees or is not otherwise covered by the statutes." Compl. Exh. I.

As a result of the Party Defendants' alleged conduct, Plaintiff asserts that he was denied

the "job" of Representative to the United States House of Representatives for New York's

Eleventh (11th) Congressional District, as well as his First Amendment right to civic association

and his Fifteenth Amendment right to the franchise, due to invidious discrimination based upon

his race and/or national origin.

## LAW AND ARGUMENT

### I.    Standard of Review on a Motion to Dismiss

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted under Fed. R. Civ. Pro. 12(b)(6), "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In

assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In

re Elevator Antitrust Litig., 502 F.3d 47, 50-51 (2d Cir. 2007) (per curiam). Legal conclusions,

however, are not entitled to any presumption of truth. Iqbal, 556 U.S. at 678. Instead, the court

must examine the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## II.   All of the Plaintiff's Causes of Action Must Be Dismissed Because the Complaint Fails to Allege Facts Constituting Purposeful Discrimination

Plaintiff asserts six causes of action, all of which require a showing of purposeful discrimination under the Equal Protection Clause of the Fourteenth Amendment.  First, Plaintiff asserts that the alleged discrimination denied him employment opportunities in violation of 42 U.S.C. § 1981.  Compl. ¶ 117.  Second, Plaintiff alleges a cause of action based upon 42 U.S.C. § 1983, alleging that "Defendants…acted with *discriminatory purpose* in violation of Plaintiffs' rights to civic association and the franchise guaranteed by the First and Fifteenth Amendment to the United States Constitution…" Id. at ¶ 125 (emphasis added).[4]  Third, Plaintiff asserts that the Party Defendants' alleged discrimination denied him employment opportunities in violation of Title VII. Id. at ¶ 129.  Fourth, Plaintiff asserts that the Party Defendants' alleged discrimination denied him employment opportunities under New York State's Human Rights Law ("NYSHRL").   Id. at ¶ 134.  Fifth, Plaintiff asserts that the Party Defendants' alleged discrimination denied him employment opportunities under New York City's Human Rights Law ("NYCHRL").  Id. at ¶ 139.  And sixth and finally, Plaintiff asserts a cause of action for

---

[4] With respect to his § 1983 claim, Plaintiff alleges that his "rights to civic association and the franchise guaranteed by the First and Fifteenth Amendment to the United States Constitution" were violated.  Compl. ¶ 125.  Plaintiff alleges, however, that he was denied those rights due to the "*discriminatory purpose*" of Mr. Gulino and the Committee.  Id. (emphasis added).  Thus, although Plaintiff alleges that his right to civic association under the First Amendment and his right the franchise under the Fifteenth Amendment were violated, he really complains of an Equal Protection violation-Plaintiff's claim is not simply that he was denied his right to civic association and his right to the franchise, but rather that he was denied those rights *because of his race and/or national origin*.  See e.g., Compl. ¶ 124 "Defendants…acted with discriminatory purpose…").  Given that the Plaintiff alleges that his First Amendment Right to civic association and his Fifteenth Amendment right to the franchise were violated because of Mr. Gulino's alleged "discriminatory purpose," his § 1983 claim should be analyzed under the Fourteenth Amendment's Equal Protection Clause.  To the extent that Plaintiff attempts to set forth a claim for a violation of his First Amendment Rights independent of any Equal Protection claim, it is addressed in § IV, *infra*.

"Reckless Supervision of a Special Election" in violation of Title VI due to the Party

Defendants' alleged discrimination.  Id. at ¶ 146.

As a general matter, "[t]o state a claim for an equal protection violation, [claimants] must

allege that a government actor intentionally discriminated against them on the basis of race,

national origin or gender."  E.g., Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).

There are three ways in which a Plaintiff might demonstrate such intentional discrimination.

First, a law or policy is facially discriminatory "if it expressly classifies persons on the basis of

race or gender."  Id. (citing Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 213, 227-29

(1995)).  Second, a facially neutral law "violates equal protection if it is applied in a

discriminatory fashion."  Id. (citing Yick Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)).  Third

and finally, "a facially neutral statute violates equal protection if it was motivated by

discriminatory animus and its application results in a discriminatory effect."  Id. (citing Village

of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 264-65 (1977)).

Plaintiff does not allege that a facially discriminatory statute or policy deprived him of any

rights, so his claims are analyzed under the latter two prongs of Equal Protection, and thus

Plaintiff must allege that Mr. Gulino and the Committee intentionally and purposefully

discriminated against him, whether in choosing to adopt facially neutral polices for

discriminatory reasons or in applying those policies in a racially discriminatory manner.[5]  The

---

[5] The requirement that a Plaintiff plead purposeful discrimination based upon race and/or national origin under the Equal Protection Clause is true for each of the Plaintiff's six asserted causes of action.  First, with respect to the § 1981 cause of action, see, e.g., Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir. 1994) (§ 1981 plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent"); Second, for the alleged § 1983 violation, see, e.g., Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006) (§ 1983 Plaintiff asserting an Equal Protection violation must show "that the Board intentionally discriminated against her, either by adopting out of racial animus policies which are facially neutral but have a racially discriminatory effect, or by applying a facially neutral policy in a racially discriminatory manner"); Third, in terms of Title VII, see, e.g., Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999) ("[t]o state a claim for an equal protection violation [for the purposes of Title VII], appellants must allege that a government actor intentionally discriminated against them on the basis of race,

Complaint, however, is completely bereft of facts from which one could infer purposeful discrimination.

Reading the Complaint in the light most favorable to the Plaintiff, the only factual allegations he asserts that remotely support an inference of racial discrimination is his claim that Mr. Gulino only interviewed white individuals of European descent for the "position" of the Democratic nominee for New York's 11th Congressional District, and that no African American, Native American, or other non-white minorities were interviewed for the "position," despite the fact that the Plaintiff wrote Mr. Gulino expressing an interest in running.  Plaintiff conclusorily alleges that this apparent focus on white Europeans to the exclusion of all others was the result of invidious racial and ethnic discrimination.  Compl. ¶¶ 102-109.  Such conclusory allegations, however, absent "evidentiary support or allegations of particularized incidents, do[…] not state a valid claim and cannot withstand a motion to dismiss."  Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 470 (2d Cir. 2006) (citing Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) and Butler v. Castro, 896 F.2d 698, 700 (2d Cir. 1990)).

Moreover, the simple fact that Plaintiff alleges that several white European individuals but no African American, Native American, or other ethnic minorities were interviewed for the "position" does not demonstrate that Mr. Gulino or the Committee acted with discriminatory

---

national origin or gender"); Fourth, in terms of the cause of action for a violation of NYSHRL, see, e.g.,. Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, 716 F.3d 10, 14 (2d Cir. 2013) ("The standards for evaluating hostile work environment and retaliation claims are identical under Title VII and NYSHRL"); Fifth, with regard to the NYCHRL cause of action, see, e.g., Ortiz v. City of New York, 105 A.D.3d 674 (1st Dept. 2013) ("Plaintiff's claims are also insufficient to meet the more lenient standard of NYCHRL, because Plaintiff alleges no facts from which the Court could determine that she was treated 'less well' than other employees *because of her race*") (emphasis added); And sixth and finally, for Plaintiff's "Reckless Supervision of a Special Election" under Title VI claim, see, e.g., Regents of Univ. of Cal. v. Bakke, 438 U.S. 265, 287 (U.S. 1978) ("Title VI must be held to proscribe only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment."). Since each of these six causes of action require the same level of purposeful discrimination as defined under the Equal Protection Clause, they are analyzed together for the purposes of judicial economy.  To the extent that the NYCHRL has a slightly more lenient standard, that claim is addressed in § II(d), *infra*.

intent.  As the Supreme Court has stated on the issue, "official action will not be held

unconstitutional solely because it results in a racially disproportionate impact….Proof of racially

discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."

Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-265 (1977).

There are a variety of factors courts look at when attempting to infer discriminatory

intent.  First, "[t]he historical background of the decision is one evidentiary source, particularly if

it reveals a series of official actions taken for invidious purposes."  Village of Arlington Heights,

429 U.S. at 266-268 (citing Lane v. Wilson, 307 U.S. 268 (1939); Griffin v. School Board, 377

U.S. 218 (1964); Davis v. Schnell, 81 F. Supp. 872 (SD Ala.), aff'd per curiam, 336 U.S. 933

(1949); abnd Keyes v. School Dist. No. 1, Denver Colo., 413 U.S. 189 (1973)).  Second, "[t]he

specific sequence of events leading up to the challenged decision also may shed some light on

the decisionmaker's purposes."  Id. (citing Reitman v. Mulkey, 387 U.S. 369, 373-376 (1967);

Grosjean v. American Press Co., 297 U.S. 233, 250 (1936)).  Third, "[d]epartures from the

normal procedural sequence also might afford evidence that improper purposes are playing a

role.  Substantive departures too may be relevant, particularly if the factors usually considered

important by the decisionmaker strongly favor a decision contrary to the one reached."  Id.  And

fourth, "[t]he legislative or administrative history may be highly relevant."  Id. (citing Tenney v.

Brandhove, 341 U.S. 367 (1951); United States v. Nixon, 418 U.S. 683, 705 (1974); and 8 J.

Wigmore, Evidence § 2371 (McNaughton rev. ed. 1961).  Plaintiff's Complaint is completely

bereft of any facts indicating the presence of these factors from which one could infer purposeful

discrimination in this case.

First, the Complaint contains no allegations regarding "[t]he historical background of the

decision" that would indicate "a series of official actions taken for invidious purposes."  See

Village of Arlington, *supra*.  To this end, the Complaint conclusorily alleges that "Defendant GULINO has a pattern in engaging in invidious discrimination in his official capacity as Chairman of the Defendant DEMOCRATIC COMMITTEE OF RICHMOND COUNTY." Compl. ¶ 110.  In support of this conclusion, Plaintiff cites precisely one prior incident, where Mr. Gulino allegedly sent a letter to Robert J. Castro on behalf of the Committee informing Mr. Castro that his services would no longer be needed in order to "seize the opportunities, energy and ideas our younger generation offers."  Compl. Exh. R.  The Complaint characterizes this letter and action as "blatant ageism and discrimination by Defendant Gulino based on Castro's age."  Compl. ¶ 114.  This letter is hardly evidence of age discrimination-political parties routinely make it a point to reach out to the "younger generation."  In addition, the Complaint does not even bother to specify how old Mr. Castro and Mr. Gulino were at the time of this letter, and thus, based upon the Complaint's allegations, one could just as easily conclude that Mr. Gulino was actually older than Mr. Castro at the time of this letter.  Third, even if the Court credited this allegation, it is not an allegation of racial discrimination, but rather age discrimination.  Fourth, finally, and most important, one conclusory allegation of age discrimination is hardly evidence of "a *series* of official actions taken for invidious purposes."

The Complaint is similarly silent with respect to the second factor cited in Village of Arlington, "[t]he specific sequence of events leading up to the challenged decision."  Third, the Complaint does not allege that there were "[d]epartures from the normal procedural sequence [that] also might afford evidence that improper purposes are playing a role."  Id.  To the contrary, in stating that "the candidates were chosen *pursuant to the Rules of the Democratic Party of the State of New York*," Compl. ¶ 68 (emphasis added), the Complaint has in fact alleged that the normal procedures were followed rather than departed from, creating an inference not of

12

discrimination but rather of even-handedness.  Fourth and finally, the Complaint is completely bereft of any allegations regarding "[t]he legislative or administrative history."

To be sure, the Village of Arlington factors discussed above are not exhaustive.  But they are instructive in making the point that in order to adequately plead a cause of action for invidious racial discrimination under the applicable statutes and constitutional provisions, the Plaintiff must allege more than just "a conclusory allegation of discrimination."  Plaintiff's failure to allege purposeful discrimination is illustrated by a comparison to Marchant v. N.Y. City Bd. of Elections, 815 F. Supp. 2d 568 (E.D.N.Y. 2011).  In Marchant, Plaintiff Everly Brown sought to be included on the ballot for the Democratic Primary for the Office of District Attorney in Queens County.  In order to secure a place on that ballot, New York law required that Brown submit a petition containing the signatures of at least 4,000 registered party members residing in the borough/county to the Board of Elections.  It was a requirement that a witness, who him or herself was a qualified voter in the relevant district, to sign the petition indicating that s/he saw the signatories sign the petition on the date indicated.  It was also a requirement that both the signatories and the witnesses include their addresses in the petition.  Marchant v. N.Y. City Bd. of Elections, 815 F. Supp. 2d 568, 568-73 (E.D.N.Y. 2011).

Brown delivered the petition with nearly double the amount of necessary signatures, but two citizen-objectors noticed discrepancies in the petition, specifically that the addresses indicated on the petition did not match those on file with the Board.  The Board agreed, and communicated to Mr. Brown that due to these deficiencies the petition contained only 2,839 valid signatures, 1,161 short of the number required to be placed on the primary ballot.  As a result, Mr. Brown was not placed on the ballot, and he then filed suit in state supreme court, requesting validation of the petition so that his name could be added to the ballot.  The state

13

court rejected these claims, and Plaintiffs, who appear to have been at least a group of the

signatories on the petition, filed suit in federal court, alleging § 1983 violations based upon racial

discrimination, among other claims.  Marchant, 815 F. Supp. 2d at 569-73.

> In support of their discrimination claims, the Marchant Plaintiffs argued that:

> [T]he Board would have been able to discern that the signatures they struck
> belonged to African-Americans because the addresses are all in neighborhoods
> dominated by…African-Americans. Plaintiffs also argued that for the past five
> decades, the Board has intentionally precluded all racial and gender minorities
> from candidacy for the office of District Attorney of Queens County, and the fact
> that only white males have been on the ballot for that office during "recent
> memory" is proof of such discrimination. Marchant, 815 F.Supp. 2d at 580-81.

The Court rejected these claims, reasoning that "Plaintiffs have not provided evidence showing

that the policies and practices regarding review of voter signatures are applied in a

discriminatory manner or that racial minority populations suffer particular adverse impacts from

the law"  because "[t]he facts as presented by both parties to the court suggest that the law affects

equally all registered voters who move and do not change their address on record with the

Board…..Nor have plaintiffs shown that the Board has applied a facially neutral policy in a

racially discriminatory manner, as would be the case if the Board knowingly declined to strike

signatures that should have been stricken due to mismatched addresses because the signatures

belonged to members of non-minority populations."  Marchant, 815 F.Supp.2d at 581.

Just as the allegation that only white males have been on the ballot for the Office of

District Attorney was, itself, insufficient to find a discriminatory purpose in Marchant, Plaintiff's

bare allegation that only white males of European descent were interviewed for the nomination is

similarly insufficient to infer purposeful discrimination here.  As in Marchant, there is nothing in

Plaintiff's Complaint from which one could infer that the selection procedure here was chosen

due to a racially discriminatory motive.

Not only has the Complaint failed to allege facts from which one could infer discriminatory intent, but the Complaint itself contains a variety of race-neutral reasons why the Plaintiff was neither interviewed nor successful in securing the nomination.  Specifically, in the letters that Plaintiff allegedly wrote to Mr. Gulino expressing his interest in the vacant congressional seat, the Plaintiff both insults Mr. Gulino and makes it clear that they have contrary political agendas.  For example, in one letter the Plaintiff tells Mr. Gulino that he has no interest in finding "good candidates" because Mr. Gulino has used his political clout to build a judiciary over which he can "exert influence" rather than focus on building a political party. Compl. Exh. O, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Jan. 14, 2015.

In the second letter allegedly expressing his interest in the vacant congressional seat, Plaintiff continues his personal attacks on Mr. Gulino in describing the "Gulino Practice" as one that "blurs the line between the Business of Politics and the Politics of Business."  Compl. Exh. P, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Jan. 30, 2015.  This personal attack continues when the Plaintiff states that for Mr. Gulino "[t]o actually support a viable Democratic candidate on Staten Island would go against all the back room political deals that you have made to build your judicial bench at the expense of the people of Staten Island and the members of the Democratic Party-the true 'Gulino Practice.'"  Id.  Finally, in a third letter to Mr. Gulino, Plaintiff states that "If you will not be our party leader, maybe it is time to find a real leader-whether in the Democratic Party or someplace else….[W]ill you be a man and tolerate someone who is not a member of the 'Racoon Lodge' that you have turned the Democratic Party on Staten Island into during your tenure as Party Leader [sic]."  Compl. Exh. Q, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Feb. 11, 2015.

15

These excerpts from the letters Plaintiff allegedly wrote to Mr. Gulino expressing his interest in the vacant congressional seat make it clear that the Plaintiff was insulting to Mr. Gulino and antagonistic to his "Gulino Agenda"-whatever that may be.  Under the First Amendment, the Plaintiff has every right to express his displeasure with the manner in which Mr. Gulino carries out his duties as the Chairman of the Democratic Committee of Richmond County, but Equal Protection does not require Mr. Gulino to throw his political support behind an individual who is so clearly hostile to him both personally and politically.

Finally, with respect to Equal Protection, Plaintiff seriously mischaracterizes both the "interview" process for which he was allegedly barred from due to racial discrimination. Plaintiff alleges that "In the public record for the Staten Island Advance newspaper on January 12, 2015, Defendant GULINO stated that he would interview each individual expressing interest in running for the open Congressional seat left vacant by Mr. Grimm's resignation." Compl. ¶ 92, Exh. N.  Based upon the Plaintiff's characterization in the Complaint, one would think that the interview process was going to be dispositive on who would be the Democratic nominee for the vacant Congressional seat.  But if one reads the entire article-again, incorporated into the Complaint as "Exhibit N"-one will see that it is not in fact these interviews which determined the candidate but rather the "party convention," to be held "once there have been official declarations of candidacy." Compl. Exh. N, "With Michael Cusick as front-runner, Democrats will interview others, vote on candidates," by Rachel Shapiro, silive.com, Jan. 12, 2015.

This news article stating that the candidate would be chosen at the Committee meeting is consistent with both the by-laws of the Committee and the allegations in the Plaintiff's Complaint.  The Committee by-laws state that the Committee Chair, in consultation with the entire Committee and its Executive Committee, has the right to select a nominee for a special

election.  See By-Laws, Article IX.  Moreover, according to the Complaint, Article I, Section 2(d) of the Rules of the Democratic Party of the State of New York requires the Committee to publicize and make available to the public any such committee meetings where party nominees might be selected.  Compl. ¶ 87.  Plaintiff concedes that "the candidates were chosen *pursuant to the Rules of the Democratic Party of the State of New York*," Compl. ¶ 68, (emphasis added) necessarily implying that Mr. Gulino, in his position as Committee Chair, selected the nominee in consultation with the full Committee, at a meeting that was duly publicized and open to the public, in conformity with the party rules Plaintiff cites in his Complaint.  Plaintiff does not allege that he attended the Committee meeting and announced his candidacy.  When combined with his utter failure to allege any facts demonstrating a discriminatory purpose, Plaintiff cannot now claim that his failure to secure the party's nomination was a result of intentional discrimination where Plaintiff has not even alleged that he attended the Committee's nominating meeting to announce his candidacy for the position.

  a.  *The Complaint Fails to State a Claim for "Disparate Impact" Under § 1981, Title VII, and the NYSHRL*

Plaintiff's Complaint, in alleging solely that Mr. Gulino only interviewed white individuals of European descent for the "position" of the Democratic nominee for New York's 11th Congressional District, and that no African American, Native American, or other non-white minorities were interviewed for the "position," despite the fact that the Plaintiff wrote Mr. Gulino expressing an interest in running, may be an attempt to allege a "disparate impact" claim under § 1981, Title VII, and the NYSHRL.  In certain instances under § 1981, Title VII, and the NYSHRL, an allegation that a facially neutral policy had a "disparate impact" on a racial or ethnic minority is sufficient to state a claim for invidious racial discrimination under the Equal Protection Clause.  Such "disparate impact" claims typically require a "stark pattern" of

discriminatory effect. <u>Village of Arlington.</u>, 429 U.S. at 264-265. More specifically, under both the federal and state standards, "a plaintiff [that] seeks to derive an inference of discrimination from allegations of disparate treatment…must plausibly allege the existence of at least one comparator who was more favorably treated despite being 'similarly situated to the plaintiff in all material respects.'" <u>Ruiz v. County of Rockland</u>, 609 F.3d 486, 493-494 (2d Cir. 2010); <u>see also</u>, <u>Brown v. Daikin America Inc.</u>, 756 F.3d 219 226 (2d Cir. 2014) ("The NYSHRL mirrors these federal obligations").

Here, Plaintiff nevertheless utterly failed that Plaintiff was "similarly situated" to those who allegedly received better treatment. Moreover, the Complaint does not bother to allege that any other African Americans, Native Americans, or other racial or ethnic minorities expressed any interest in the "position" at issue, let alone that they were deprived of an opportunity to pursue it. Under these circumstances, it strains credulity to conclude that the interview process even had a disparate impact on racial and/or ethnic minorities solely because the one African American individual who expressed interest was not given an interview, particularly where the Complaint contains no facts from which one could infer that Plaintiff was similarly situated to those interviewed. Clearly, the Plaintiff's threadbare and conclusory allegations are insufficient to withstand a Motion to Dismiss. <u>See</u>, <u>e.g.</u>, <u>Albert v. Corovano</u>, 851 F.2d 561, 572 (2d Cir. 1988) ("The naked allegation that [the defendants] 'selectively enforce[ed] the College rules…against plaintiffs…because they are black [or] Latin is too conclusory to survive a motion to dismiss") (second and third brackets in original).

   b. *Plaintiff Has Not Adequately Alleged Purposeful Discrimination Under NYCHRL*

Although the New York City Human Rights Law is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," <u>Albunio v.</u>

18

City of New York, 16 N.Y.3d 472, 477-478 (2011), such claims are still subject to the same "purposeful discrimination" analysis to which Title VII and New York State Human Rights Law claims are subjected.  See Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (per curiam).

Thus, as this Court has recently noted, "[a] complaint must still allege facts on the basis of which a court can find differential treatment—i.e., the plaintiff was 'treated less well—*because of a discriminatory intent*.'"  Soloviev v. Goldstein, 2015 U.S. Dist. LEXIS 62702, 28-29 (E.D.N.Y. May 12, 2015) (emphasis added) (citing Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102 (2d Cir. 2013) and Lasalle v. City of New York, 2015 U.S. Dist. LEXIS 41163 (S.D.N.Y. March 30 2015)).  In Lasalle, Judge Crotty concluded that "Plaintiff's claims are also insufficient to meet the more lenient standard of NYCHRL, because Plaintiff alleges no facts from which the Court could determine that she was treated 'less well' than other employees *because of her race*." Lasalle, 2015 Dist. LEXIS 62702 at 16 (citing Ortiz v. City of New York, 105 A.D.3d 674 (1st Dept. 2013)).  Many other cases follow this line of reasoning.  See, e.g., Askin v. Dept. of Educ. of N.Y., 110 A.D.3d 621 (1st Dept. 2013) ("Although the plaintiff asserts that defendants' actions were motivated by age-related bias, she does not make any concrete factual allegation in support of that claim, other than that she was 54 years old and was treated adversely under the State law or less well under the City HRL.  Plaintiff's allegations in this respect amount to mere legal conclusions, and do not suffice to make out this element of her claim").

### III.    Plaintiff's First, Third, Fourth, and Fifth Causes of Action Must All Be Dismissed Because There is No "Employment Relationship" At Issue

Plaintiff's first, third, fourth, and fifth causes of action all assert claims sounding in employment discrimination.  It is "axiomatic that in order for one to be held liable for employment discrimination under New York law, there must have existed between the parties, at the time of the action complained of, the relationship of employer and actual or prospective

employee, the touchstone of which is mutually beneficial economic substance." 18 N.Y. Jur. 2d Civil Rights § 48 (2013) (citing Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist., 112 A.D.2d 240 (2d Dep't 1985) and State Div. of Human Rights v. Bd. of Co-op. Educ. Servs., 98 A.D.2d 958, (4th Dep't 1983)).  The Second Circuit has also recognized this "essential condition" of remuneration in the Title VII context.   See, e.g., O'Connor v. Davis, 126 F.3d 112, 116 (2d Cir. 1997) (absence of direct or indirect remuneration necessitated dismissal of the Plaintiff's Title VII claim); see also, Bowen-Hooks v. City of New York, 13 F.Supp. 3d 179, 210-211 (E.D.N.Y. 2014) (assessment of disparate treatment claims under Title VII, the NYSHRL, § 1981, and § 1983 is identical, and include the requisite employment relationship).

In the instant case, Plaintiff has not-and indeed could not-allege that either Mr. Gulino or the Committee is an "employer" under the applicable statutes because this "essential condition" of remuneration is absent: Plaintiff does not seek employment at the Committee, but rather with the United States Government as a member of the House of Representatives.  See Compl. ¶ 52 ("[t]his complaint centers around a job—the job of U.S. Representative for New York's 11th Congressional District (NY-11.")).  Furthermore, none of other the typical earmarks of an employment relationship are present between Mr. Gulino and the Committee on the one hand and the Plaintiff on the other.  For example, neither Mr. Gulino nor the Committee has any authority to determine the work hours, conditions, compensation, and responsibilities of for the position that Plaintiff sought-i.e., a member of the U.S. House of Representatives.

Not only do both Mr. Gulino and the Committee lack the ability to determine the conditions of employment for a member of the U.S. House of Representatives, but they also lack the ability to "hire" anyone for that "position."  The decision to "hire" an individual to the "position" of Member of the U.S. House of Representatives is made collectively by the electors

of the relevant congressional district, in this case New York's Eleventh (NY-11) Congressional

District.  See NY ELN § 12-300 ("Representatives in the house of representatives of the congress

of the United States shall be chosen in the several congressional districts at the general election

held in every even-numbered year.").  To the extent that securing the approval of Mr. Gulino

and/or the Committee was necessary before Plaintiff could seek the "job" of United States

Congressman-and, as described in § IV(b), *infra*, their approval was not necessary due to the

existence of the designating petition method of appearing on the general election ballot-such

approval is analogous to a state requiring licenses before individuals engage in certain

professional activities such as law, medicine, or commercial operation of a motor vehicle.

Courts have consistently rejected the notion that such licensing agencies are "employers" for the

purposes of the applicable employment discrimination statutes due to these agencies lack of

control over the conditions of an individual's employment.  See e.g., U.S. v. N.Y. State Dep't of

Motor Vehicles ("NYSDMV"), 82 F.Supp.2d 42, 55 (E.D.N.Y. 2000) (holding that state

agencies that merely set standards for public school bus drivers were not "employers" under Title

VII, as they had "no authority to hire or fire drivers, to supervise drivers' work or the conditions

of their employment, to determine their rate or method of pay, or to maintain records of their

employment."); see also Lavendar-Cabellero v. Dep't of Consumer Affairs, 458 F.Supp 213, 215

(S.D.N.Y. 1978) (Title VII not extended to a city agency in the exercise of its statutory mandate

to issue licenses to process servers as licensing agency had no relationship to the citizen or his

employment other than as a consequence of its duties pursuant to its license issuing/police

powers.).

    In addition, with respect to Title VII specifically , the statute defines an "employer" as "a

person engaged in an industry affecting commerce who has fifteen or more employees…"   42

U.S.C. § 2000e(b). Plaintiff conceded on his EEOC application-which notably lists "Democratic Committee of Richmond County, John P. Gulino, Chair" as the employer and not the U.S. House of Representatives-that the Committee employs fewer than fifteen employees.[6] See Compl. Exh. H. EEOC closed its file on the Plaintiff's claim for precisely that reason, Compl. Exh. I, "EEOC Dismissal and Notice of Rights."

**IV.    Plaintiff Has Not Adequately Alleged a Violation of His First Amendment Right to Civic Association**

> *a. There is No First Amendment Right to a "Fair Chance of Prevailing in Their Parties' Candidate-Selection Process"*

Even if Plaintiff's § 1983 claims really are based upon the denial of his First Amendment right to civic association and not a denial of that right due to racial discrimination, Plaintiff has still failed to adequately state a claim upon which relief may be granted. It is undisputed that Plaintiff has "First Amendment rights to organize, access the ballot, and vote for the candidate of [his] choice." Rivera-Powell v. N.Y. City Bd. of Elections, 470 F.3d 458, 468 (2d Cir. 2006). In particular, an individual has a First Amendment "associational right to vote in a party primary without undue state-imposed impediment." N.Y. State Bd. of Elections v. Lopez Torres, 552 U.S. 196, 204 (U.S. 2008). What is at issue here is of course not a denial of Plaintiff's right to vote or run in the party primary-in fact, no primary was even held as the nomination was made by the Chair of the County Committee, in consultation with the full Committee, pursuant to New York State law and the rules of the Democratic Party for the State of New York, Complaint ¶ 68-but rather his failure to secure the Party's nomination at the meeting of the County Committee.

---

[6] It is true that the Committee does not qualify as an "employer" under Title VII because it lacks the requisite number of employees (15), but the U.S. House of Representatives-the "job" that Plaintiff allegedly seeks-has 435 members, plus innumerable staff, well over the fifteen employee threshold. This disconnect in the number of employees serves merely to highlight that between the "position" Plaintiff seeks and the entities and individuals he has sued here.

Plaintiff's claim must fail, however, because there is no First Amendment right to a "fair shot" at a party's nomination.[7]

The case of Lopez Torres v. N.Y. State Bd. of Elections, 552 U.S. 196 (2008) is almost directly analogous to the issues here.  At issue in Lopez Torres was New York State's "convention system" by which political parties could nominate candidates for the office of Justice of the Supreme Court of the State of New York.  As described in Lopez Torres, under New York State law, party nominees for the office of Justice of the Supreme Court of the State of New York were chosen at a convention held by the relevant judicial district's political parties. Delegates were elected to the party's judicial convention for the applicable judicial district in a primary election occurring approximately one to two weeks prior to the holding of the convention.  Individuals could run for the position of delegate to a county's party convention by securing either 500 signatures from enrolled party members within the particular county, or by securing 5% of such members' signatures.  Lopez Torres, 552 U.S. at 199-201.

On three separate occasions, the main Plaintiff in Lopez Torres sought-and failed to secure-the democratic nomination for Justice of the Supreme Court of the State of New York for the County of Kings.  Lopez Torres alleged that the convention system that led to her thrice failed bid for the nomination was unconstitutional because "New York's election law burdened the rights of challengers seeking to run against candidates favored by the party leadership, and deprived voters and candidates of their rights to gain access to the ballot and to associate in

_____

[7] In the same § 1983 cause of action asserting a denial of his First Amendment right to civic association, Plaintiff also alleges that he was denied his Fifteenth Amendment right to "the franchise" due to the Party Defendants' alleged "discriminatory purpose."  See Compl. ¶ 125.  Similarly, for Plaintiff's sixth cause of action, "Reckless Supervision of the Special Election-Title VI Violation," the Plaintiff alleges that "Defendants…have discriminated against the Plaintiff on the basis of his race/color…and/or national origin…in violation of Title VI by excluding him from participation in, being denied the benefits of, or being subjected to discrimination under the interview process related to the Special Election…"  Compl. ¶ 146.  Since both the Plaintiff's Fifteenth Amendment and Title VI claims assert invidious racial discrimination, they are not analyzed separately but rather addressed collectively with the other causes of action alleging discrimination in § II, supra.

choosing their party's candidates….[T]hey sought a declaration that New York's convention system for selecting Supreme Court Justices violates their First Amendment rights, and an injunction mandating the establishment of a direct primary election to select party nominees for Supreme Court Justice." Lopez Torres, 552 U.S. at 201-02.

The Lopez Torres Court initially rejected the notion that the Plaintiff could assert a First Amendment claim with respect to the *party's* associational rights, reasoning that:

> Respondents are in no position to rely on the right that the First Amendment confers on political parties to structure their internal party processes and to select the candidate of the party's choosing….The weapon wielded by these plaintiffs is their own claimed associational right not only to join, but to have a certain degree of influence in, the party. They contend that New York's electoral system does not go far enough--does not go as far as the Constitution demands--in ensuring that they will have a fair chance of prevailing in their parties' candidate-selection process. Lopez Torres, 552 U.S. 196, 203-204 (U.S. 2008).

Having rejected the notion that a political party's First Amendment right to civic association grants individuals members a First Amendment right to "have a fair chance of prevailing in their parties' candidate-selection process," the Court then considered whether *individuals* have such rights to better access the party's nominations under the First Amendment independent of a political party's civic association rights. The Supreme Court categorically rejected precisely that argument in Lopez Torres, noting that "[t]his contention finds no support in our precedents," Lopez Torres, 552 U.S. at 204 (U.S. 2008).

In rejecting an individual right to have "have a fair chance of prevailing in their parties' candidate-selection process" under the First Amendment, the Lopez Torres Court actually suggested that a contrary holding would infringe upon the First Amendment rights of a political party to "structure their internal party processes and to select the candidate of the party's choosing." The Court stated:

24

> Respondents' real complaint is not that they cannot vote in the election for delegates, nor even that they cannot run in that election, but that the convention process that follows the delegate election does not give them a realistic chance to secure the party's nomination. The party leadership, they say, inevitably garners more votes for its slate of delegates (delegates uncommitted to any judicial nominee) than the unsupported candidate can amass for himself. And thus the leadership effectively determines the nominees. But this says nothing more than that the party leadership has more widespread support than a candidate not supported by the leadership.  No New York law compels election of the leadership's slate--or, for that matter, compels the delegates elected on the leadership's slate to vote the way the leadership desires. And no state law prohibits an unsupported candidate from attending the convention and seeking to persuade the delegates to support her….Here respondents complain not of the state law, but of the voters' (and their elected delegates') preference for the choices of the party leadership.  Lopez Torrez, 552 U.S. 196, 204-5 (U.S. 2008).

So too here: Plaintiff's objection is not that he was denied an opportunity to vote for or run in the primary election, but rather that the system of securing nominees for a special election via the Committee Chair in consultation with the committee itself rather than through primary election and the designating petition method gives the party leaders excessive power and deprives ordinary party members from having "a fair chance of prevailing in their parties' candidate-selection process," see, e.g., Comp. ¶ 19 ("Defendant GULINO is one of 'Three Men in a Room'); ¶ 69 ("John Gulino was the *de facto* selector of the Democratic Party's candidate…), in the same way in which the Lopez Torrez plaintiffs alleged that New York's reliance on the party convention to nominate candidates for Supreme Court Justice rather than primary election accessible by the designating petition method violated their First Amendment rights.  But, just as in Lopez Torres, Plaintiff's inability to secure the desired nomination under the Committee Chair nomination system "says nothing more than that the party leadership has more widespread support than a candidate not supported by the leadership….Here respondents complain not of the state law, but of the voters' (and their elected delegates') preference for the choices of the party leadership."  Lopez Torres, 552 U.S. at 204-5.

In suggesting that a an individual First Amendment right to have "a fair chance of prevailing in their parties' candidate-selection process" would violate a political party's First Amendment right to civic association, the Supreme Court explicitly sanctioned the disproportionate political clout that party leaders wield when compared to individual party members in such judicial conventions (or, as here, local party committees). The Court stated that "[p]arty conventions, with their attendant 'smoke-filled rooms' and domination by party leaders, have long been an accepted manner of selecting party candidates….Selection by convention has never been thought unconstitutional, even when the delegates were not selected by primary but by party caucuses." Lopez Torres, 552 U.S. 196, 205-206 (U.S. 2008).

> b. *The Applicable New York Laws and Party Rules Governing Nominations Do Not Violate the First Amendment Because They Are Reasonably Related to a Legitimate State Purpose While Still Providing Plaintiff With Adequate Access Both to the Party and the General Election Ballot*

To be sure, the Lopez Torres Court acknowledged the possibility that certain state and party proscriptions on access to the party's nominating system could violate the First Amendment, either by infringing on a political party's First Amendment association rights or by removing individual party members from the nomination process completely, and the Court cited several cases where it had so held. The Lopez Torres Court, however, pointed to three factors of New York's judicial convention system that it found persuasive in holding that the convention nomination system satisfied the requirements of the First Amendment. First, the Court concluded that a convention nomination process-as well as other restrictions such as signature and time requirements-were entirely reasonable as a means of ensuring that a candidate had at least a "modicum of support" before accessing the ballot to ensure that the general election ballot remains "manageable." Lopez Torres, 552 U.S. at 204. Second, the Court found it compelling that the party members of the judicial district at issue could vote for the delegates who would

26

ultimately determine the nominee in a primary before the convention.  Id. at 204-5

("Respondents' real complaint is not that they cannot vote in the election for delegates, nor even

that they cannot run in that election, but that the convention process that follows the delegate

election does not give them a realistic chance to secure the party's nomination.").  Third and

perhaps most importantly, the Supreme Court found it compelling that potential candidates who

could not secure their party's nomination had "an adequate opportunity to appear on the general-

election ballot."  Id. at 207.  The Supreme Court specifically held that "New York's general-

election balloting procedures for Supreme Court Justice easily pass muster under this standard.

Candidates who fail to obtain a major party's nomination via convention can still get on the

general-election ballot for the judicial district by providing the requisite number of signatures of

voters resident in the district."  Id. at 208.

Thus, under Lopez Torres, an individual is not denied his or her First Amendment

association rights due simply to the fact that a convention system dominated by party leaders,

rather than a straight primary election, is used to nominate party candidates for judicial office.

Rather, under Lopez Torres, a Plaintiff seeking relief because a Committee or Convention

nomination system deprives him or her of his or her First Amendment rights must demonstrate

that he or she did not have an opportunity to vote for the members of the committee or delegates

to the convention, that the system used to nominate candidates was not reasonably related to

some legitimate state interest[8] such as the state's desire to keep the ballot "manageable," or that

there was no alternative means of securing placement on the general election ballot.  Plaintiff has

---

[8] Had the Court found that there was in fact a First Amendment right to have a "fair chance of prevailing in their
parties' candidate-selection process," then presumably a higher standard of scrutiny would apply.  See, e.g., Maslow
v. Bd. of Elections, 658 F.3d 291, 296 (2d Cir. 2011) ("The level of scrutiny we apply to the state's justification
depends on the rule's effect on First Amendment rights.  Logically, the greater the burden, the more exacting our
inquiry.  Where the burden on a plaintiff's First Amendment rights is trivial, a rational relationship between a
legitimate state interest and the law's effect will suffice.") (citing Price v. N.Y. State Bd. of Elections, 540 F.3d 101,
109 (2d Cir. 2008).

not-and in fact cannot-allege any of these three things because New York State Law-as implemented through the Rules of the Democratic Party for the State of New York and the Democratic Committee of Richmond County-more than adequately addresses each of these concerns.

First, the use of the local Committee Chair, in consultation with the Committee, as the party nomination system for a special election serves as a means to ensure that candidates appearing on the general election ballot have some "modicum of support" in order to keep the ballot "manageable," just like the judicial convention system at issue in Lopez Torres.  In addition, in the instant case, the state has an additional compelling reason for pursuing nomination by county committee rather than primary election not present in Lopez Torres:  Specifically, at issue here is a "special election" to fill a vacancy created by the unexpected resignation of the former office-holder, Michael Grimm.  Compl. ¶ 58-59.  Between the time that the incumbent vacates his seat and a new candidate is selected, citizens of the congressional district at issue (in this case, NY-11) are lacking in congressional representation, and the state certainly has a compelling-or at least legitimate-interest in expediting the process by which the vacancy is filled.  Requiring an additional primary election before reaching the general, special election rather than nomination by standing local party chair in consultation with the full committee would surely and needlessly extend the time that the citizens of New York's Eleventh Congressional District lacked representation.

The second factor that the Lopez Torres Court found compelling, the ability of party members to vote and run in the primary where the delegates to the judicial nominating convention are chosen, is also present here: Committee members are elected during the primary in odd-numbered years, By-Laws Art. II § 2, all enrolled Democrats in the applicable district

may vote for the Committee members, id., and all registered Democrats in the applicable district are eligible to run for a seat on the Committee.  Id. at § 3.  The Committee Chair, in turn is elected by the County Committee every other year after the primary election, id. Art. III § 3, Art. V § 1, and any duly-enrolled Democrat may seek the office of Committee Chair, even if not a member of the County Committee.  Id. Art. V § 1.  Thus, just as in Lopez Torres, Plaintiff is afforded all of his First Amendment rights to associate with the party here because, by virtue of his membership in the Democratic Committee of Richmond County and residence in the district, he is eligible to both vote for and run in any of the elections by which the Committee members and its Chair are chosen.  See Lopez Torres, 552 U.S. at 204-5 (rejecting Plaintiff's claim that there exists-and they were deprived thereof-a First Amendment right to a "fair chance of prevailing in their parties' candidate-selection process" in part because "respondents do not claim that they have been excluded from voting [or running] in the primary [for delegates to the judicial convention].").

Third, finally, and most importantly, Plaintiff had an alternative means to access the general election ballot by securing the requisite number of signatures and delivering them to the appropriate Board of Elections.  See Generally NY ELN § 6-138-46 (providing requirements for independent nominations via designating petitions); Lopez Torres, 552 U.S. at 207-8 ("Candidates who fail to obtain a major party's nomination via convention can still get on the general-election ballot for the judicial district by providing the requisite number of signatures of voters resident in the district") (citing N. Y. Elec. Law Ann. § 6-142.2).  In his Complaint, however, Plaintiff alleges that "Under the New York Election Law § 6-114, Party nominations for an office to be filled at a *special election* for U.S. Representative cannot be accomplished by the petitioning process to obtain ballot access."  Complaint ¶ 64.  This is absolutely correct, but it

is completely irrelevant: The <u>Lopez Torres</u> Court held that a designating petition method that allows a candidate to access the *general*-but not *primary*-election ballot absent a party nomination was a sufficient protection for Constitutional rights to access the ballot.  <u>Lopez Torres</u>, *supra*.  Since this alternative means of accessing the ballot via signature petitions was available to Plaintiff, the simple fact that the Committee did not select Plaintiff as the Democratic Nominee at its meeting for doing so does not violate his Constitutional rights.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Mr. Gulino and the Democratic Committee of Richmond County respectfully request that this Court dismiss the Complaint in its entirety.

Respectfully Submitted,

By:

/s/ Andrew L. Hoffman
Langweber McQuat, LLP
Andrew L. Hoffman, Of Counsel &
Richard M. Langweber, Esq.
261 Madison Ave., 12th Floor
New York, NY 10016
P: (646) 771-6772
F: (212) 736-3910
rlangweber@langwebermcquat.com
ahoffman@andrewhoffmanlaw.com
*Counsel to Defendants John P. Gulino, Esq.,*
*and the Democratic Committee of Richmond*
*County*

Dated: October 15, 2015
        New York, NY

To:     Richard A Luthmann, Esq.
        Luthmann Law Firm PLLC
        1811 Victory Boulevard
        Staten Island, NY 10314
        Tel:  (718) 447-0003
        Fax: (347) 252-0254
        rluthmann@luthmannfirm.com