UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
LAWRENCE GILDER,

              Plaintiff,

      -against-                                    Index No.: 15-CV-04094
                                                                 (KAM)(RER)

JOHN P. GULLINO, both individually and in his capacity as
the Chairman of the DEMOCRATIC COMMITTEE OF
RICHMOND COUNTY, BOARD OF ELECTIONS IN THE
CITY OF NEW YORK, CLERK 1, CLERK 2 and CLERK 3,
said names being as of yet unidentified arties, JOHN and
JANE DOES 1-10, said names being fictitious; XYZ
ENTITIES, AND JOHN DOE(S) #1-10,

              Defendants.
-----------------------------------------------------------------------X


**REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF
DEFENDANTS JOHN P. GULINO'S AND
THE DEMOCRATIC COMMITTEE OF RICHMOND COUNTY'S
MOTION TO DISMISS (Fed. R. Civ. Pro. 12(b)(6))**


                                                     Andrew L. Hoffman, Of Counsel, &
                                                     Richard M. Langweber, Esq.
                                                     **Langweber McQuat LLP**
                                                     261 Madison Ave., 12th Floor
                                                     New York, NY 10016
                                                     P: (646) 771-6772
                                                     F: (212) 736-3910
                                                     C: (508) 245-9566
                                                     ahoffman@andrewhoffmanlaw.com
                                                     rlangweber@langwebermcquat.com
                                                     *Counsel for Defendants John P. Gulino and*
                                                     *the Democratic Committee of Richmond*
                                                     *County*

## TABLE OF CONTENTS

                                                                                                          Page

Table of Authorities…………………………………………………………………………….ii

Preliminary Statement…………………………………………………………………………..1

I.     Plaintiff's Improper Evidence……………………………………………………………..1

II.    Plaintiff's Opposition States No Legal or Factual Basis to Support Allegations of
       Purposeful Discrimination……………………………………………………………...2

III.   There is No Employment Relationship Between The Plaintiff and the Party Defendants
       and Plaintiff Did Not Need The Party Nomination to Appear on the General Election
       Ballot……………………………………………………………………………………5

IV.    Plaintiff Has Not Adequately Alleged a Violation of His First Amendment Right to Civic
       Association……………………………………………………………………………...7

Conclusion……………………………………………………………………………….10

## Table of Authorities

**<u>Cases</u>**

*City of New York v. Bell Helicopter Textron, Inc.*,
    2015 U.S. Dist. LEXIS 81467 (E.D.N.Y. June 16, 2015)……………………………...1

*Faulkner v. Beer*,
    463 F.3d 130, 134 (2d Cir. 2006)……………………………………………………………1

*N.Y. State Bd. of Elections v. Lopez-Torres*,
    552 U.S. 196 (U.S. 2008)……………………………………………………………….7, 8, 9

*Schuette v. Coalition to Defend Affirmative Action*,
    __, U.S. __, __, 134 S.Ct. 1623, 1654-56 (2014)…………………………………………...4

*Straus v. Credit Lyonaisse, S.A.*,
    925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013)………………………………………………….2

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (U.S. 1977)…………………………………………………………….3, 4, 5

**<u>Statutes and Rules</u>**

Fed. R. Civ. Pro. 12(b)(6)………………………………………………………………………1

NY ELN § 6-138...…………………………………………………………………………..6, 7

NY ELN § 6-140.……………………………………………………………………………..6, 7

NY ELN § 6-142.…………………………………………………………………………......6, 7

NY ELN § 6-144.……………………………………………………………………………..6, 7

NY ELN § 6-146.……………………………………………………………………………..6, 7

**<u>Administrative Regulations and Party By-Laws</u>**

By-Laws for the Democratic Committee of Richmond County,
    Art. II § 1……………………………………………………………………………….8

By-Laws for Democratic Committee of Richmond County,
    Art. II § 2…………………………………………………………………….....................8

By-Laws for Democratic Committee of Richmond County,
    Art. V § 1……………………………………………………………………………….8

By-Laws for Democratic Committee of Richmond County,
   Art. IX……………………………………………………………......................8

**PRELIMINARY STATEMENT**

Defendants John Gulino and the Democratic Committee of Richmond County (collectively, the "Party Defendants") respectfully seek dismissal of the claims against them because Plaintiff's Complaint fails to show any cognizable causes of action. Party Defendants also submit that Plaintiff's opposition is devoid of any legal or factual argument that could possibly support his baseless claims. Distilled to its core, Plaintiff's opposition, as with his Complaint, amounts to a troubling demand that he be embraced by a political party that he apparently loathes-a condition for which no court, nor the Constitution, could ever provide relief.[1]

I. **Plaintiff's Improper Evidence**

The Party Defendants request that this Court disregard the exhibits Plaintiff has filed in opposition to this motion for various reasons (see documents identified in Plaintiff's Memorandum of Law as Exhibits "A" through "L").

It is well settled that submitting "evidence"[2] beyond the Complaint is improper when considering a motion pursuant to Fed. R. Civ. Pro. 12(b)(6). "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself." E.g., City of New York v. Bell Helicopter Textron, Inc., 2015 U.S. Dist. LEXIS 81467 (E.D.N.Y. June 16, 2015) (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

---

[1] Plaintiff's counsel, Mr. Luthmann, has a long history of animus towards Mr. Gulino and Mr. Luthmann, not Mr. Gilder, is the likely impetus for this lawsuit. It should be noted that Mr. Gilder is an employee of Mr. Luthmann's. See Compl. Exh. K, Letter from Lawrence E. Gilder to Scott Stringer, New York City Comptroller, Jan. 5, 2015. Because the relationship between Mr. Gulino and Mr. Luthmann is not before the Court on this motion, we have not endeavored to provide the Court with this evidence, although it is available upon request. The frivolity of Mr. Luthmann's submissions themselves, however, demonstrate clearly both that Mr. Luthmann has a great deal of animus towards Mr. Gulino, and that it is Mr. Luthmann, and not Mr. Gilder, who is the true Plaintiff in this action. It is not the habit of the undersigned to allege such misconduct on behalf of opposing counsel (in fact, the undersigned has never done so), but we are compelled by the extraordinary circumstances of this case.

[2] Party Defendants do not concede the exhibits amount to actual evidence.

Plaintiff attempts to persuade the Court with exhibits that include: Exhibit "A," an unauthenticated and irrelevant "subpage" purportedly from the New York City Board of Elections website; Exhibit "B," an irrelevant newspaper report that is inadmissible hearsay (see e.g., Straus v. Credit Lyonaisse, S.A., 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) ("The newspaper reports are inadmissible hearsay and cannot be relied upon."); Exhibit "C," the purported transcript of an unsworn and irrelevant television news dialogue;  Exhibit "D" an inadmissible newspaper article profiling the Plaintiff; Exhibit "E," an inadmissible and irrelevant newspaper article about political lobbyists; Exhibit "F," unauthenticated and irrelevant records allegedly from the New York City Campaign Finance Board; Exhibit "G," unauthenticated and irrelevant "personnel guidelines" purportedly from the NYCBOE; Exhibit "H," an unauthenticated and irrelevant BOE "certification" document; Exhibit "I," an unauthenticated and irrelevant document pertaining to congressional salaries; Exhibit "J," an unauthenticated and irrelevant "employment information" page for the U.S. House of Representatives; Exhibit "K," an irrelevant and inadmissible newspaper article about an African American Democratic candidate from Staten Island who won a city council seat (and which completely undermines the Plaintiff's allegations in this case); and Exhibit "L," an inadmissible newspaper article that has nothing to do with elections or any alleged misconduct by the party defendants.. Accordingly, the Party Defendants respectfully request that the Court disregard Plaintiff's submitted exhibits

**II.   Plaintiff's Opposition States No Legal or Factual Basis to Support Allegations of Purposeful Discrimination**

Plaintiff places a great deal of reliance on Mr. Gulino's public statement that Mr. Gulino wished to have a "transparent process" in interviewing candidates for the democratic nomination at issue in this election and litigation.  Specifically, Plaintiff seems to argue that because Mr. Gulino stated he would have a transparent interview process for all interested in the nomination,

2

and because Mr. Gulino interviewed only "white males of European descent" and not the Plaintiff-who had expressed interest and is African American-then Mr. Gulino's decision not to interview the Plaintiff must have been racially motivated. See, e.g., Mem. of Law 38-39.[3]  The question before this Court, however, is whether or not one can infer a discriminatory intent based on the simple fact that only white individuals were interviewed while no African Americans were interviewed, not whether Mr. Gulino voluntarily interjected and then violated a "transparent process."  As was argued in our original Motion to Dismiss, the Complaint is bereft of facts from which one could make any such inference, whether or not Mr. Gulino made any references to a "transparent process."  MTD 8-20.[4]

Plaintiff argues that based on the five factors described in Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252 (U.S. 1977), one can infer intent to discriminate based solely on the fact that only "white males of European descent" were interviewed and Plaintiff, an African American who had expressed interest in the position, was not interviewed.  First, Plaintiff argues that under Arlington Heights, one can infer intent to discriminate from the impact of the decision not to interview the Plaintiff, because "[t]he impact of the harms go to the very heart of Gilder's dignity and to one of the firmest pillars of our United States Constitution…"  Mem. of Law 41.  There is no dispute that losing out on a "job" in which one is interested may have adverse consequences for one's dignity, and there is little question that this negative impact is sure to be exacerbated when the denial is due to racial discrimination.  But the simple fact that an individual-even an African American individual-is harmed by official action

---

[3] Unless otherwise specified, all citations to "Mem. of Law" refer to Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss in Gilder v. Gulino et. al., EDNY Docket No. 15-CV-04094, Nov. 24, 2015.
[4] Unless otherwise specified, all citations to "MTD" refer to Defendant John Gulino's and the Democratic Committee of Richmond County's Motion to Dismiss in Gilder v. Gulino et. al., EDNY Docket No. 15-CV-04094, Oct. 15, 2015.

3

does nothing to demonstrate that the decision was motivated by racial animus. Perhaps more to the point, the negative impact on an individual harmed by a decision is not the "impact" to which the Arlington Heights Court referred. Specifically, when the Arlington Heights Court referred to the discriminatory "impact" of an official action, it referred not to the harm that individuals may suffer when discriminated against, but rather a "stark pattern" of discriminatory effect against a particular racial or ethnic group. Village of Arlington., 429 U.S. at 264-265. As was argued in our initial Motion to Dismiss, Plaintiff has not even bothered to allege facts-and could not allege such facts, because none exist-that would constitute such a "stark pattern" by, for example, alleging that a large group of African Americans were denied the opportunity to seek the nomination. MTD 8-20.

Second, Plaintiff also argues that the "historical background" of the decision gives rise to an inference of discriminatory intent. Mem. of Law 42-45. Specifically, Plaintiff cites a dissent from Justice Sotomayor in Schuette v. Coalition to Defend Affirmative Action, 134 S.Ct. 1623, 1654-56 (2014). In this dissent, Justice Sotomayor cites a history of practices in southern states such as Texas, Oklahoma, and Alabama that were adopted after the Civil War and passage of the Fifteenth Amendment and were designed to deprive African Americans of the right to vote. Mem. of Law 42-44. This is completely inapplicable to this case, as New York State has no history of election discrimination, and Plaintiff did not bother to plead this non-existent history of election discrimination in New York State in his Complaint.[5]

Third and fourth, Plaintiff argues that Mr. Gulino's statement regarding the "transparent process" for selecting candidates, and then his refusal to interview the Plaintiff, is a "specific

---

[5] To the extent that Plaintiff describes such disparate impact with respect to Staten Island politics, these allegations are not contained in the Complaint and should not be considered by this Court. See § I, *supra*. Moreover, even if considered by this Court, none of these allegations prove a pattern of racial discrimination in elections on Staten Island.

4

sequence of events" as well as a "procedural or substantive departure from the norm" under Arlington Heights from which one could infer purposeful racial discrimination. Mem. of Law 46. But again, nowhere does Plaintiff explain how this "transparent process," or how Mr. Gulino's decision not to interview the Plaintiff, was motivated by purposeful racial discrimination.

Fifth and finally, Plaintiff argues that one can infer intentional discrimination from the legislative and/or administrative decision leading up to the challenged decision. Mem. of Law 47. Plaintiff, however, cites no such history in support of this assertion, and in fact admits that he has no facts to support this assertion in arguing that he requires discovery in order to reach the question of whether or not the legislative or administrative supports an inference of intentional discrimination. Id.

Accordingly, because Plaintiff cannot meet even one of the Arlington Heights factors, he is unable to plead facts from which one could infer intentional discrimination and his Complaint should be dismissed.[6]

### III. There is No Employment Relationship Between The Plaintiff and the Party Defendants and Plaintiff Did Not Need The Party Nomination to Appear on the General Election Ballot

Plaintiff argues that securing the democratic party nomination-which requires the approval of Mr. Gulino in consultation with the local Party Committee-is necessary for him to appear on the general election, and that Mr. Gulino's approval in consultation with the local Party Committee is thus a prerequisite for the "job" of member of the United States House of

---

[6] Plaintiff also seems to argue that the Special Election statutory framework is not "facially neutral" because it "does not take into account a scenario where the associational rights of political parties end and due process and equal protection rights are triggered." Mem. of Law 37. As an initial matter, it should be noted that not a single New York election law makes any racial classifications and those statutes are thus facially neutral, contrary to Plaintiff's assertion. But more importantly, as demonstrated in this section, Plaintiff is unable to plead any facts from which one could infer intentional racial discrimination due to a discriminatory application of a facially neutral law.

5

Representatives. According to Plaintiff, Mr. Gulino's approval was necessary because nomination by the party is the *only* way to appear on the ballot in a special election, and there is no alternative means for an independent candidate to appear on the general election ballot in a special election. Mem. of Law 27. This is simply not true: Under NY ELN § 6-138-46, the Plaintiff need only collect the requisite number of signatures and deliver them to the appropriate Board of Elections to appear on the general election ballot, even absent the imprimatur of the local party.

In response to the Party Defendants' argument that there is no employer relationship between the Plaintiff on the one hand and the Mr. Gulino and the Committee on the other, Plaintiff blithely asserts that "United States Representative is a Job and Ballot Access in New York is a Pre-Requisite." Mem. of Law, 22. In support of this assertion, Plaintiff notes simply that there is a salary attached-$174,000 per year-and the constitutional requirements for a member of the United States House of Representatives (i.e., the officer-holder must be at least twenty-five years old, a citizen of the United States for at least seven years, and an inhabitant of the state they represent at the time of the election). Id.

Although it may be true that member of the United States House of Representatives is a job in the sense that Representatives receive compensation and that ballot access is a prerequisite, none of Plaintiff's arguments establish either that an employment relationship exists between the Plaintiff on the one hand and Mr. Gulino and the Committee on the other, or that Mr. Gulino and the Committee denied Plaintiff ballot access. As was argued in the initial Motion to Dismiss, there is no employment relationship between the Plaintiff and the Party Defendants because the Party Defendants do not compensate the Plaintiff or set his work

6

conditions, such as hours and duties, for the job the Plaintiff seeks-only Congress itself and "we, the people" can alter those work conditions.  MTD 20-22.

In sum, under any analysis, the Plaintiff's employment claims must fail, as the Plaintiff has failed to establish the requisite "employment" relationship, failed to demonstrate purposeful discrimination, and at all times relevant, the Plaintiff had *other means* of accessing the ballot.[7]

### IV. Plaintiff Has Not Adequately Alleged a Violation of His First Amendment Right to Civic Association

Plaintiff relies heavily on N.Y. State Bd. of Elections v. Lopez Torres, 522 U.S. 196 (2008) in arguing that the Party Defendants improperly denied the Plaintiff his First Amendment right to civic association.  Specifically, Plaintiff seems to argue that because nomination via the Party Chair-in this case, Mr. Gulino-and the local Party Committee is the only way to appear on the general election ballot, then the Plaintiff's First Amendment rights have been violated.  See e.g., Mem. of Law, 27.

Although New York's statutory scheme for nominations in special elections might violate the Plaintiff's First Amendment rights if there were no alternative to nomination via Party Chair and local Party Committee to appear on the general election ballot, it is simply not true that there is no alternative means to appear on the general election ballot.  New York State Election Law 6-138 through 6-146 prescribes the method by which independent nominees may seek access to the general election ballot, even without the endorsement of political parties.  See Generally, NY ELN 6-138-146.  Since Plaintiff could in fact seek to appear on the general election ballot even

---

[7] Plaintiff also appears to argue that the Certification that the Board of Elections (BOE) followed-and that was mandated by statute-in this case is unconstitutional because it does not require a certification that the local Party Committee "has discharged its responsibility in accordance with applicable law-specifically in compliance with due process, equal protection and in cognizance of all rights and obligations under the State and Federal Constitution." Mem. of Law 35-36.  To the extent this argument applies to Mr. Gulino and the Committee, it requires a showing of purposeful discrimination, a showing the Plaintiff has failed to make.  See § III, *supra*.

7

without the nomination of the Democratic Party of Richmond County, no First Amendment right of the Plaintiff's has been violated. In addition, it is extremely important to note that Plaintiff did not attempt to-and did not plead that he attempted to-comply with the petitioning process described in NY ELN 6-138-146.

There are some minor differences between the delegate nomination primary in Lopez Torres and the committee election process at issue here. These distinctions are not germane to Plaintiff's First Amendment rights. In particular, in Lopez Torres, it was delegates to a specific judicial convention that determined the nominee, while in this case it is the Committee Chair in consultation with the full Committee that is charged with managing the party's affairs as a general matter, By-Laws Art. II § 1 ("The County Committee shall have general authority over the organization of the Democratic Party in Richmond County"), who selects the candidate. See generally, By-Laws, Art. IX. Similarly, in Lopez Torres the delegates were elected approximately one to two weeks before the convention, Lopez Torres, 552 U.S. at 199-201, while in this case the most precise thing we can say is that the Chair and Committee members will have been chosen at some point within the previous two years. See By-Laws Art. II § 2 ("The members of the County Committee shall be elected biennially…"); id. Art. V § 1 ("The officers of the County Committee are to be elected after the Primary Election to be held in odd number years."). These distinctions are immaterial, however, because in both Lopez Torres and the instant case, the essential ingredients of the ability of party members who are also district residents to both run and vote in the applicable primary are present.

In addition, in the instant case, the state has an additional compelling reason for pursuing nomination by county committee rather than primary election not present in Lopez Torres: Specifically, at issue here is a "special election" to fill a vacancy created by the unexpected

8

resignation of the former office-holder, Michael Grimm.  Compl. ¶ 58-59.  Between the time that the incumbent vacates his seat and a new candidate is selected, citizens of the congressional district at issue (in this case, NY-11) are lacking in congressional representation, and the state certainly has a compelling-or at least legitimate-interest in expediting the process by which the vacancy is filled.  Requiring an additional primary election before reaching the general, special election rather than nomination by standing local party chair in consultation with the full committee would surely and needlessly extend the time that the citizens of New York's Eleventh Congressional District lacked representation.[8]  Thus, to the extent that the Committee primary rules place a greater burden on an individual's ability to either vote for or run in the primary to select the Committee members and Chair that will ultimately be responsible for choosing a nominee by, for example, relying on a standing party committee and its chair rather than a special convention to make a nomination, those additional burdens are justified by the need to move expeditiously in the special election context.  Finally, to the extent that Plaintiff objects that the election procedures for a special election in New York State violate the Constitution, that objection is properly lodged with the state, not Mr. Gulino: Mr. Gulino, as local Party Chair, is obligated to follow the law, and he did so in this case.

In addition to Plaintiff's misplaced argument regarding the lack of ballot access, Plaintiff also describes three hypotheticals that seem to lead to the proposition that even in the absence of a First Amendment violation, Plaintiff may still have a claim under Lopez Torres if he can prove intentional, invidious racial discrimination.  See Mem. of Law 34 ("Under *N.Y. State Bd. of*

---

[8] Plaintiff himself is acutely aware of the state's interest in quickly filling the vacancy, as he lamented directly to Mr. Gulino: "It has been 37 days that we have been without representation in Washington…. But your recent actions can only lead to the conclusion that you do not want Staten Island to have representation any time soon, and when the election does take place, you have all but ensured that a Democrat will not be elected."  Compl. Exh. Q, Letter from Lawrence E. Gilder to John P. Gulino, Esq., Feb. 11, 2015.  Plaintiff even joined a law suit to compel the governor to set a date for the special election, Compl. ¶ 59.

9

*Elections v. Lopez Torres*, Greta Gypsy may still have a claim. All of this will depend on whether or not Dill Weed and the Local Blanco County NYS KKK Party intentionally engaged in intentional invidious discrimination."). The proposition that Lopez Torres and the First Amendment notwithstanding, Plaintiff might still have a claim for invidious discrimination under the Fourteenth Amendment, is not in dispute. Plaintiff, however, has not even come close to meeting the pleading standard for intentional discrimination, see II, *supra*, and his Complaint must therefore be dismissed.

## CONCLUSION

For all of the foregoing reasons, Mr. Gulino and the Democratic Committee of Richmond County respectfully request that this Court dismiss the Complaint in its entirety.

Respectfully Submitted,

By:

/s/ Andrew L. Hoffman
Langweber McQuat, LLP
Andrew L. Hoffman, Of Counsel &
Richard M. Langweber, Esq.
261 Madison Ave., 12th Floor
New York, NY 10016
P: (646) 771-6772
F: (212) 736-3910
rlangweber@langwebermcquat.com
ahoffman@andrewhoffmanlaw.com
*Counsel to Defendants John P. Gulino, Esq., and the Democratic Committee of Richmond County*

Dated: December 16, 2015
　　　New York, NY

To:　Richard A Luthmann, Esq.
　　　Luthmann Law Firm PLLC
　　　1811 Victory Boulevard
　　　Staten Island, NY 10314

Tel:  (718) 447-0003
Fax: (347) 252-0254
rluthmann@luthmannfirm.com

11