UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

LAWRENCE E. GILDER,

        Plaintiff,

  -against-

JOHN P. GULINO, both individually
and in his capacity as Chairman of
that DEMOCRATIC COMMITTEE OF
RICHMOND COUNTY, DEMOCRATIC
COMMITTEE OF RICHMOND COUNTY, BOARD
OF ELECTIONS IN THE CITY OF NEW
YORK, CLERK 1, CLERK 2, AND CLERK
3, said names being fictitious; XYZ
ENTITIES 1-10, said names being
fictitious,

        Defendants.

--------------------------------X

**MEMORANDUM & ORDER**

15-cv-4094 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

      Plaintiff Lawrence Gilder commenced this action
pursuant to 42 U.S.C. §§ 1981 and 1983, Titles VI and VII of the
Civil Rights Act of 1964, and the New York City and State Human
Rights Laws, against John P. Gulino, the Democratic Committee of
Richmond County, the Board of Elections in the City of New York,
and unnamed clerks and entities. (ECF No. 1, Complaint dated
7/13/15.) Plaintiff principally alleges that Gulino, in his
capacity as Chair of the Democratic Committee of Richmond
County, discriminated against plaintiff based on his African
American and Native American race by failing to choose him to
serve as the Democratic Party's nominee in the May 5, 2015

special election for New York's 11th Congressional District.
Gulino and the Democratic Committee of Richmond County
(collectively, the "Party Defendants") have moved to dismiss all
claims against them pursuant to Federal Rule of Civil Procedure
12(b)(6) for failure to state a claim upon which relief can be
granted. (ECF No. 38, Party Defendants' Mem. in Support of
Motion to Dismiss ("Party Def. Mem.").) The Board of Elections
in the City of New York ("City Board") has separately moved to
dismiss all claims against it pursuant to Rule 12(b)(6). (*See*
ECF No. 31, City Board's Mem. in Support of Motion to Dismiss
("City Mem."). For the reasons set forth below, the Party
Defendants' and City Board's motions to dismiss are granted.

## Background

### I.    Documents Considered

The Complaint attaches numerous exhibits, including a
copy of the charge of discrimination that plaintiff filed with
the United Stated Equal Employment Opportunity Commission
("EEOC") (Ex. I), and copies of letters plaintiff allegedly sent
to defendant Gulino (Exs. O, P, Q). In deciding a motion to
dismiss under Rule 12(b)(6), a court generally may "look only to
the allegations on the face of the complaint." *Roth v.
Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). A court may,
however, consider "documents attached to the complaint as an
exhibit or incorporated in it by reference, matters of which

judicial notice may be taken, or documents either in plaintiffs'
possession or of which plaintiffs had knowledge and relied on in
bringing suit." *Chambers v. Time Warner. Inc.,* 282 F.3d 147,
153 (2d Cir. 2002) (internal quotation marks, citation, and
alterations omitted).

Plaintiff also annexed a wide assortment of documents
to his opposition to the defendants' motions to dismiss. (*See*
ECF No. 34, Plaintiff's Opposition to Defendants' Motion to
Dismiss ("Pl. Opp.").) Exhibit H to plaintiff's opposition is a
copy of the Certification of Party Nomination for the Democratic
Party in the Special Election for New York's 11th Congressional
District, which was filed with the City Board and is a public
record of which the court may take judicial notice. (ECF No.
35-8, Certificate of Nomination ("Cert. of Nomination") dated
2/27/2016.)[1] Other exhibits attached to plaintiff's opposition
memorandum were not referenced in the Complaint. For example,
plaintiff asks the court to consider a 2014 Washington Post
article unrelated to this case (Ex. L) and a 2014 report from
the Congressional Research Service regarding congressional
salaries and allowances (Ex. I). The court declines to consider
documents submitted for the first time in opposition to
defendants' motions to dismiss. *See, e.g.*, *Friedl v. City of*

---

[1] Both motions to dismiss also attach a copy of the Certificate of Nomination.

*New York*, 210 F.3d 79, 84 (2d Cir. 2000) (vacating ruling because lower court had considered matters outside pleadings in dismissing the plaintiff's claims).

## II.  Factual Background

At the pleading stage, the court assumes the truth of all of plaintiffs' well-pleaded factual allegations.  *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.  Special Election for New York's 11th Congressional District

On January 5, 2015, Michael Grimm resigned from his position as United States Representative for New York's 11th Congressional District.  (Compl. ¶ 58.)  Shortly thereafter, plaintiff, "continuing his pattern of political activism," joined a lawsuit to compel the Governor of New York to set a date for a special election to fill the vacant congressional seat.  (*Id.* ¶ 59.)  The lawsuit was resolved after the Governor set the special election ("Special Election") to elect a new member of Congress for May 5, 2015.  (*Id.* ¶¶ 61, 68.)

Article 6 of the New York Election Law governs how political parties select the candidates that will represent them in a general election.  N.Y. Elec. Law § 6-100.  Under Article

4

6, political party nominations for a position to be filled at a special election for U.S. Representative "shall be made in the matter prescribed by the rules of the party." N.Y. Elec. Law § 6-114. The Rules of the Democratic Party for the State of New York, in turn, state that "[n]ominations for an office to be filled at a special election . . . shall be made . . . by the district or party committee thereof . . . ." (Compl. ¶ 65) (citing Art. VI, Sec. 2(a)(ii) of the Rules of Democratic Party of New York.)[2] In the 11th Congressional District, the "district committee" is composed of the Chair of the Democratic Committee of Richmond County and the Chair of the Democratic Committee for Kings County. (Compl. ¶ 68.) Defendant John Gulino is the Chair of the Democratic Committee of Richmond County. (*Id.* ¶ 9.)

### B. Plaintiff's Requests to Interview for the Democratic Party Nomination

The Complaint describes plaintiff as a "black man in America, a member of the Cherokee Nation, a grandfather, a lover, a political activist, and a registered voter and enrolled member of the Democratic Party in Richmond County, New York." (I*d.* ¶ 7.) Plaintiff alleges that after the Special Election was scheduled, Gulino, in his capacity as Chairman of the

---

[2] New York State Election Law provides that "[e]ach committee may prepare rules for governing the party within its political unit." N.Y. Elec. Law § 2-114.

Democratic Committee of Richmond County, stated that he would interview each individual expressing interest in running as the Democratic Party's nominee in the Special Election. (*Id.* ¶ 92.) Plaintiff cites and attaches a January 12, 2015 article in the Staten Island Advance newspaper in which Gulino is quoted as stating, "I'm old fashioned in a lot of ways, that people who are interested you must interview them and see what they have to say." (*Id.* ¶ 93.)

On January 15, 2015, allegedly in response to Gulino's representation in the newspaper article, plaintiff sent Gulino a letter that expressed plaintiff's interest in serving as the Democratic Party's nominee in the Special Election, and requested an interview with Gulino. (*Id.* ¶ 94.) The letter states, in part, "[w]e both can . . . eat some Sicilian food and break bread while we discuss my vision for the 11th Congressional District, one you obviously have never considered." (*Id.* ¶ 95, Ex. O.) Plaintiff alleges that he did not receive a response to the January 15th letter. (*Id.* ¶ 96.) On January 30, 2015 and February 11, 2015, plaintiff sent follow-up letters to Gulino requesting an interview (*Id.* ¶¶ 97, 99, Exs. P & Q), but did not receive a response to the letters. (*Id.* ¶¶ 98, 100.) Plaintiff alleges that Gulino only interviewed "white persons of European Descent" for the Democratic Party nomination and discriminated against plaintiff

on the basis of his race and national origin by not interviewing him. (*Id.* ¶¶ 2, 102, 146.)

### C. Democratic Party Nomination for the Special Election

Plaintiff alleges that candidates for the Special Election "were chosen, pursuant to the Rules of the Democratic Party of the State of New York, by the Democratic Chairs of the County Committees of the various counties of Kings and Richmond . . . ." (*Id.* ¶ 68.) According to the Certificate of Nomination that was filed with the City Board after the nominating process concluded, the 11th Congressional District Committee of the Democratic Party convened a special meeting on February 27, 2015. (Pl. Opp. at Ex. H, Cert. of Nomination ¶ 4.) The Certificate of Nomination identifies John P. Gulino, Chair of the Democratic County Committee in Richmond County, and Charles J. Ragusa, Chair of the Democratic County Committee in Kings County, as the members of the 11th Congressional District Committee of the Democratic Party. (*Id.* ¶¶ 1-2.) A quorum of Committee members was present and, by majority vote, selected Vincent J. Gentile as the Democratic Party candidate from the 11th Congressional District for the Special Election. (*Id.* ¶¶ 1-4.) Plaintiff does not allege that he attended the February 27, 2015 special meeting or officially declared his candidacy for the nomination.

## III. Procedural History

On March 15, 2015, plaintiff filed a complaint with the EEOC alleging that Gulino and the Democratic Committee of Richmond County illegally discriminated against plaintiff on the basis of race and national origin.  (Compl., Ex. H; *Id.* ¶ 50.) The EEOC dismissed the complaint on April 27, 2015 because "Respondent employs less than the required number of employees or is not otherwise covered by the statutes."  (Compl., Ex. I, Dismissal and Notice of Rights Letter.)

Plaintiff filed this action on July 13, 2015.  (ECF No. 1, Complaint.)  Based on the foregoing factual allegations, plaintiff asserts that defendants "subjected Plaintiff to unlawful discrimination because of, *inter alia*, his race/color and/or national origin."  (Compl. ¶ 2.)  As the court can best discern, the Complaint alleges the following causes of action: (1) employment discrimination in violation of 42 U.S.C. § 1981; (2) deprivation of plaintiff's First and Fifteenth Amendments rights to associate and exercise his franchise in violation of 42 U.S.C. § 1983; (3) employment discrimination in violation of Title VII of the Civil Rights Act of 1964; (4) employment discrimination in violation of New York State's Human Rights Law; (5) employment discrimination in violation of New York City's Human Rights Law; and (6) "Reckless Supervision of the Special Election" in violation of Title VI of the Civil Rights

Act of 1964.  Plaintiff seeks declaratory and injunctive relief against all defendants, and monetary damages against the Party Defendants.

Defendants filed their motions to dismiss in December 2015.  Plaintiff filed an opposition memorandum (ECF No. 34), to which defendants replied.  (ECF Nos. 32, 40.)

## IV.  Legal Standard

"To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  A complaint providing only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## Claims Against the Party Defendants

## I.    Section 1983 Claims

Pursuant to Rule 12(b)(6), the Party Defendants move to dismiss plaintiff's § 1983 claims for failure to state a claim upon which relief may be granted.  In order to maintain a

§ 1983 action, a plaintiff must allege two essential elements.
First, "the conduct complained of must have been committed by a
person acting under color of state law." *Pitchell v. Callan*, 13
F.3d 545, 547 (2d Cir. 1994) (citation omitted).[3] Second, "the
conduct complained of must have deprived a person of rights,
privileges or immunities secured by the Constitution or laws of
the United States." *Id.* Section 1983 "does not create a
federal right or benefit; it simply provides a mechanism for
enforcing a right or benefit established elsewhere." *Morris-*
*Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d
153, 159 (2d Cir. 2005) (citing *Okla. City v. Tuttle*, 471 U.S.
808, 816 (1985)).

Although the Complaint formally alleges only a
violation of associational rights under the First Amendment and
a violation of "franchise" guaranteed by the Fifteenth
Amendment, the court will, for the sake of completeness, also
construe plaintiff's allegations to also raise an equal
protection claim under the Fourteenth Amendment. (*See* Compl. at
¶ 124 ("Defendants . . . acted with a discriminatory purpose").)[4]

---

[3] The Party Defendants may be considered state actors for purposes of
plaintiff's § 1983 claims, and the Party Defendants do not argue otherwise.
As the Second Circuit has explained, "when the state grants political parties
the right to nominate candidates and then gives those nominees special access
to the ballot . . . the parties' procedures constitute state action."
*Montano v. Lefkowitz,* 575 F.2d 378, 383 n.7 (2d Cir. 1978).

[4] All defendants moved to dismiss plaintiff's equal protection claim to the
extent such a claim is alleged.

Because the Complaint fails to state a claim under all three constitutional provisions, plaintiff's § 1983 claims against the Party Defendants are dismissed.

**A.  First Amendment Associational Rights Claim**

It is well settled that the First Amendment protects "the rights of candidates and their supporters 'to organize, access the ballot, and vote for the candidate of their choice.'" *McMillan v. N.Y. State Bd. of Elections*, No. 10-cv-2502, 2010 WL 4065434, at *10 (citing *Rivera–Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006)); *see also Anderson v. Celebrezze,* 460 U.S. 780, 787-88 (1983).  In *Rivera-Powell,* the Second Circuit discussed the relationship between First Amendment associational rights claims and Fourteenth Amendment due process claims in certain ballot access cases.  *See* 470 F.3d at 468-70.  Specifically, the Second Circuit clarified that

> [w]hen, as here, a plaintiff challenges a Board of Election decision not as stemming from a constitutionally or statutorily invalid law or regulation, but rather as contravening a law or regulation whose validity the plaintiff does not contest, there is no independent burden on First Amendment rights when the state provides adequate procedures by which to remedy the alleged illegality.

*Id.* at 469; *see also id.* at 469-70 ("[W]hen a candidate raises a First Amendment challenge to his or her removal from the ballot based on the allegedly unauthorized *application* of an admittedly

valid restriction, the state has satisfied the First Amendment if it has provided due process.") (emphasis in original).

Here, plaintiff does not dispute the facial validity of any state law or regulation, but rather alleges "[t]he Defendants' selection process for the Democratic Party's candidate in the May 5, 2015 Special . . . violated United States Supreme Court precedent because the Defendants were State Actors insofar as the May 5, 2015 Special Election did not allow a petitioning process." (Compl. ¶ 91 (citing *N.Y. State Bd. of Elections v. Lopez-Torres*, 552 U.S. 196, 210-11 (2008).)

Plaintiff is correct that under New York Election Law there is no opportunity for an individual to obtain a political party's nomination for a special election by petition. But in *Lopez Torres*, cited in the Complaint and discussed extensively in plaintiff's opposition memorandum, the Supreme Court unmistakably held that the First Amendment does not enshrine "a 'fair shot' at winning the party's nomination." 552 U.S. at 205.

Furthermore, there was no burden on plaintiff's First Amendment associational rights because plaintiff had an opportunity to access the general election ballot by petition. Plaintiff incorrectly asserts he had no opportunity to petition to appear on the general election ballot for a special election. (Pl. Opp. at 27.) However, Article 6 of New York's Election Law

prescribes the means by which an individual may qualify for the general election ballot by petition. N.Y. Elec. Law § 6-138 to § 6-146. The general election petition option "changes the [First Amendment] analysis" because it permits voters to consider a candidate who does not have a party designation. *Lopez-Torres*, 552 U.S. at 211-212 (Kennedy, J., concurring); *cf. Munro v. Socialist Workers Party,* 479 U.S. 189, 199 (1986) ("It can hardly be said that Washington's voters are denied freedom of association because they must channel their expressive activity into a campaign at the primary as opposed to the general election"). Plaintiff does not allege that he was denied the opportunity to access the general election ballot by petition. His associational rights therefore were not violated and his First Amendment claim must be dismissed.

### B. Fifteenth Amendment Claim

Plaintiff alleges that defendants violated his right to "the franchise" as guaranteed by the Fifteenth Amendment. The Fifteenth Amendment provides that:

> The right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude.

U.S. Const. amend. XV, § 1. "[T]he Fifteenth Amendment applies to claims based on a denial of the right to vote." *Montano v. Suffolk Cty. Legislature*, 268 F. Supp. 2d 243, 270 (E.D.N.Y.

2003).  *See Baker v. Pataki,* 85 F.3d 919, 926 (2d Cir. 1996)
(intentional discrimination necessary for claim of denial of
right to vote under Fifteenth Amendment).  Plaintiff does not
allege that his right to vote has been infringed.  Accordingly,
plaintiff's Fifteenth Amendment claim is dismissed.

### C. Fourteenth Amendment Claim

Plaintiff's allegations also fail to state a viable
Fourteenth Amendment equal protection claim.  The Equal
Protection Clause prohibits a state actor from denying "'any
person within its jurisdiction the equal protection of the
laws,' which is essentially a direction that all persons
similarly situated should be treated alike."  *Cleburne v.
Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S.
Const. amend. XIV).  The Second Circuit has held that "a § 1983
action to remedy errors in the election process allegedly
violating the equal protection clause does not exist unless the
state action constituted intentional or purposeful
discrimination."  *Gold v. Feinberg*, 101 F. 3d 796, 800 (2d Cir.
1996) (quoting *Powell v. Power*, 436 F.2d 84, 88 (2d Cir. 1970));
*see also Diaz v. N.Y. City Bd. of Elections*, 335 F. Supp. 2d
364, 367 (E.D.N.Y. 2004) (finding that plaintiff's "unsupported
claim beyond her mere allegation of discrimination" failed to
allege an equal protection violation).

Thus, to state an equal protection claim, plaintiff

must allege that the Party Defendants intentionally discriminated against him, "either by adopting out of racial animus policies which are facially neutral but have a racially discriminatory effect, or by applying a facially neutral policy in a racially discriminatory manner." *Rivera-Powell,* 470 F.3d at 470 (citing *Hayden v. Cnty. of Nassau,* 180 F.3d 42, 48 (2d Cir. 1999)). "To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994). Plaintiff has made no such allegation. Conclusory allegations of intentional discrimination, "without evidentiary support or allegations of particularized incidents, do[ ] not state a valid claim and so cannot withstand a motion to dismiss." *Rivera-Powell,* 470 F.3d at 470 (internal quotation marks omitted); *see also Piccolo v. New York City Campaign Fin. Bd.*, No. 05-cv-7040, 2007 WL 2844939, at *11 (S.D.N.Y. Sept. 28, 2007) ("Conclusory allegations of intentional discrimination will not suffice to sustain a claim on a motion to dismiss . . . .").

Plaintiff fails to state an equal protection violation because his own allegations, accepted as true for purposes of considering the instant motion, establish that "candidates were chosen, *pursuant to the Rules of the Democratic Party of the*

*State of New York*, by the Democratic Chairs of the County Committees of the various counties of Kings and Richmond . . . ." (*Id.* ¶ 68) (emphasis added.)  The Rules of Democratic Party of New York are facially neutral and the Complaint does not allege that they were enacted with discriminatory intent or applied in a discriminatory fashion at the February 27, 2015 special meeting to choose a nominee.

Plaintiff alleges that Gulino discriminated against him on the basis of his race and national origin by only interviewing "white persons of European Descent" to serve as Democratic Party's Special Election nominee.  (Compl. ¶ 2, 103.) But Gulino's statement that he intended to interview interested candidates does not constitute a law or policy of the Democratic Party.  In fact, in the January 12, 2015 newspaper article plaintiff cites and attaches to the Complaint, Gulino confirms that candidates will be chosen at the "party convention" after "there have been official declarations of candidacy."  (Compl., Ex. N, Rachel Shapiro, *With Michael Cusick as Front-Runner, Democrats will interview others, vote on candidates*, Staten Island Advocate, Jan. 12, 2015.)  As plaintiff concedes, the nominee was selected at the February 27, 2015 special meeting pursuant to the state party's rules.  (Compl. ¶ 68.)  The Complaint does not allege that plaintiff attended the special meeting or ever announced his official candidacy.  Gulino's lack of response to

plaintiff's letters, without more, provides no basis to infer that Gulino was motivated by any discriminatory intent in not interviewing plaintiff, and "official action will not be held unconstitutional solely because it results in a racially disproportionate impact." *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977).

At its core, plaintiff's complaint is based on the notion that he did not receive a fair opportunity to serve as the Democratic Party's nominee in the Special Election. Even assuming that were true, there is "no constitutional right to have a 'fair shot' at winning the party's nomination." *Lopez Torres*, 552 U.S. at 205. This principle is particularly relevant in the context of a congressional special election, where permitting the nomination of candidates by local parties – not by primary election – expedites the election process, thereby reducing the time the constituents of a congressional district are unrepresented. Because there is no basis to conclude that the Party Defendants violated plaintiff's equal protection rights, plaintiff's Fourteenth Amendment claim is dismissed.

## II. Section 1981 Claim and Title VII Claims

Plaintiff next alleges "employment discrimination" in violation of 42 U.S.C. § 1981 and Title VII. Title VII prohibits an employer from discriminating "against any

individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims of disparate treatment under Title VII and § 1981 are assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209-10 (E.D.N.Y. 2014); *Ruiz v. Cnty. of Rockland,* 609 F.3d 486, 491 (2d Cir. 2010) (analyzing Title VII and § 1981 claim for racial discrimination under *McDonnell Douglas* framework).

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must show that: "(1) he belonged to a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). "Title VII is an *employment* law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers." *Tadros v. Coleman,* 717 F. Supp. 996, 1003 (S.D.N.Y. 1989), *aff'd,* 898 F.2d 10 (2d Cir.), *cert. denied,* 498 U.S. 869 (1990) (emphasis in original). After plaintiff filed his EEOC complaint, the EEOC determined that the respondents (Gulino and the Democratic

Committee of Richmond County) were "not . . . covered by the [employment discrimination] statutes."  (Compl., Ex. I.)

Plaintiff's Title VII and § 1981 employment discrimination claims fail because plaintiff has not, and cannot, allege that the Party Defendants were "employers" that subjected plaintiff to an adverse employment action.  Plaintiff was not seeking employment with Gulino or the Democratic Committee of Richmond County.  Rather, plaintiff alleges that "[t]his complaint centers around a job – the job of U.S. Representative for New York's 11th Congressional District (NY-11)."  (Compl. ¶ 52.)  Neither Gulino nor the Democratic Committee of Richmond County had authority to "hire" plaintiff for the position of United States Representative.  Nor would they have controlled the "means and manner" of plaintiff's employment had he been elected to Congress.  *See Dortz v. City of New York*, 904 F. Supp. 127, 142 (S.D.N.Y. 1995) (discussing scope of "employer" within meaning of Title VII).

Under New York Election Law, the decision to "hire" a member of Congress is made by voters in the relevant congressional district.  *See* N.Y. Elec Law § 12-300 ("Representatives in the house of representatives of the congress of the United States shall be chosen in the several congressional districts at the general election held in every even-numbered year.").  Plaintiff argues that Gulino was the "de

19

facto selector of the Democratic Party's candidate," necessarily implying that Gulino's approval was necessary to obtain the "job" of U.S. Representative.  (Pl. Opp. at 24-25.)  As discussed, however, plaintiff could gain access to the general election ballot by petition, and has not alleged that the Party Defendants prevented him from seeking that opportunity. Gilder's "de facto" approval thus was not a prerequisite to obtaining the "job" of U.S. Representative.  Accordingly, plaintiff's employment discrimination claims pursuant to Title VII and § 1981 are dismissed.

### III. Title VI Claim

Plaintiff brings a claim for "Reckless Supervision of the Special Election" in violation of Title VI of the Civil Rights Act of 1964.  Specifically, plaintiff alleges that the Party Defendants discriminated against him by "excluding him from participation in, being denied the benefits of, or being subjected to discrimination under the interview process related to the Special Election on May 5, 2015 in New York's Congressional District for the job of United States Representative."  (Compl. ¶ 146.)

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance."  42 U.S.C. § 2000d.  To

state a claim under Title VI, a plaintiff must demonstrate that

(1) the defendant received federal financial assistance, (2) the

plaintiff was an intended beneficiary of the program or activity

receiving the assistance, and (3) the defendant discriminated

against the plaintiff on the basis of race, color, or national

origin in connection with that program or activity.  *Martin v.*

*State Univ. of New York*, 704 F. Supp. 2d 202, 233 (E.D.N.Y.

2010).  Where, as here, a plaintiff alleges employment

discrimination, "the federal funds received by defendants must

have been aimed primarily at providing employment."  *Id.*  For

the reasons stated in Section I.C, *supra*, plaintiff has not

plausibly alleged that the Party Defendants discriminated

against him on the basis of his race, color, or national origin.

Consequently, his Title VI claim for "reckless supervision" of

the Special Election is dismissed.

### Claims against the City Board

All federal claims against the City Board must be

dismissed because plaintiff fails to allege that the City Board

discriminated against him pursuant to a policy or practice.[5]  The

City Board was not involved in the nomination process during

which plaintiff alleges he suffered discrimination.  The City

---

[5] As discussed *infra*, the court declines to exercise supplemental jurisdiction
over plaintiff's state law claims.

Board's role was limited to accepting the Certificate of
Nomination for filing.

When suing a municipality under §§ 1981 or 1983, "the
plaintiff is required to show that the challenged acts were
performed pursuant to a municipal policy or custom." *Littlejohn
v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (quoting
*Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir.
2004)); *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658, 694
(1978). Plaintiff's only allegations against the City Board are
that it is incompetent and corrupt (Compl. ¶ 30), and has "an
obligation to ensure that the entire election process, including
the selection of candidates for public office, in [sic] done by
a process whereby no person is subjected to invidious
discrimination based upon, *inter alia*, his or her race, color
and/or national origin, in violation of applicable law." (*Id.* ¶
32.) Although a court must accept as true all well-pled factual
allegations in the complaint, that requirement is "inapplicable
to legal conclusions" such as those alleged against the City
Board. *Iqbal*, 556 U.S. at 678. Plaintiff's allegations thus
fail to state a claim against the City Board under §§ 1981 or
1983. *See Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir.
2008) (plaintiff must "demonstrate that, through its deliberate
conduct, the municipality was the moving force behind the
alleged injury").

Plaintiff's Title VII claim against the City also fails because, among other reasons, plaintiff did not file a timely EEOC complaint against the City Board and obtain a right-to-sue letter. A Title VII claimant may bring suit in federal court "only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Russo v. Lightning Fulfillment*, *Inc.*, 196 F. Supp. 2d 203, 208 (D. Conn. 2002) (citing 42 U.S.C. § 2000e-5(e) and (f); *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001)). Moreover, the City Board was not an "employer" of plaintiff under Title VII.

Plaintiff's Title VI claim also must be dismissed because, as discussed, the Complaint includes no allegations of discrimination by the City Board. Moreover, to the extent that plaintiff asserts that the City Board "recklessly supervised" the primary by simply by certifying the Certificate of Nomination (Pl. Opp. at 46), he is incorrect as a matter of law. It is well settled the City Board has "no power to deal with questions of fact or with objections involving matters not appearing upon the face of the petition." *Schwartz v. Heffernan*, 109 N.E.2d 68, 69 (N.Y. 1952); *Dekom v. New York*, No. 12-cv-1318, 2013 WL 3095010, at *2 (E.D.N.Y. June 18, 2013), *aff'd*, 583 F. App'x 15 (2d Cir. 2014) (noting the authority of a local board of elections in New York is "strictly ministerial" in reviewing objections to a party nominating petition).

## State Law Claims

A district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3); *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003) ("In most circumstances, a district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage."). Because the court has dismissed all of plaintiff's federal causes of action, the court declines to exercise supplemental jurisdiction over plaintiff's New York City and New York State Human Rights Law claims. Accordingly, any plaintiff's remaining state law claims are dismissed.

## Unidentified Clerks and XYZ Entities

For all the same reasons stated above, plaintiff has failed to state plausible claims against the unidentified clerks and XYZ entities. The court dismisses plaintiff's claims against these clerks and entities.

## Leave to Amend

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, any amended complaint would be futile because, as explained herein, plaintiff's federal claims fail as a matter of law. Leave to

replead therefore is denied and, with the exception of plaintiff's remaining state law claims, the Complaint is dismissed with prejudice.

## Conclusion

For the foregoing reasons, defendants' motions to dismiss are granted.  Because the court dismisses all federal claims in this action with prejudice, the court declines to exercise supplemental jurisdiction over any remaining state law claims.  The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close this case.


**SO ORDERED.**

Dated:    September 30, 2016
          Brooklyn, New York

                              _____/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge